LENTILHON and others *vs.* MOFFAT and others.

---

Judgment creditors may join in filing a bill to reach the equitable interests, choses in action or concealed property of their debtor.

Whenever there are creditors or other persons having demands, (which are cognizable in equity and of equal standing,) upon a common fund or estate, and out of which they claim to be paid, the proper course for them is to unite in one bill or for one or more to file a bill in behalf of all. Such a bill is not multifarious.

Whether, where a bill is filed by several judgment creditors, and any one or more of them fails to prove his judgment and execution returned, the bill would be dismissed as to all : *Query ?*

A debtor may provide in an assignment for payment of present and prospective costs of suits going on, (relating to some of the assigned property,) without its invalidating such assignment.

A debtor assigns a part of his property, in trust, for all his creditors, and to be paid to them, "as they respectively execute under their hands and seals a full release and discharge of their respective debts, claims, and demands" against him. If all the creditors do not accept of the assignment within sixty days, then the debtor has power to appoint so much of the property as may not be accepted, to such creditors as he may think proper; and that such appointment shall go into effect at the expiration of such sixty days, or as soon as such non-acceptance could be ascertained : *Held*, that such an assignment hindered and delayed creditors and was void.

*It would seem*, that while preferences are allowed, a debtor, who assigns every thing generally, may provide that those creditors who, within a reasonable time, agree to accept the amount in full and give a discharge, shall be first paid.

---

JUDGMENT creditors had joined in this case to set aside a deed of assignment.

The defendant, John Moffat, was formerly in extensive business in the city of New York as a dry goods merchant. In the year one thousand eight hundred and thirty-one, and the beginning of one thousand eight hundred and thirty-two, he contracted a large amount of debts. Being then unable, from

*November 12,*
1832.

*Debtor and Creditor.
Assignment.
Parties.*

sickness, to attend much to business, his affairs became confused and he embarrassed. On the thirtieth day of March, one thousand eight hundred and thirty-two, he was compelled to stop payment.

Having a large stock of goods on hand, and a considerable amount of outstanding debts owing to him, and the complainants, and some other creditors, pressing on to judgment in actions at law, he made an assignment to the defendants, Elizur Hall and Caleb Swan, who were likewise creditors, in trust for their benefit and his other creditors. It was executed by actual delivery, and accepted by the assignees only one or two days before the first judgment was recovered. Moffat, at the time of making the assignment, was confined to his bed by severe sickness.

The deed of assignment did not purport, upon its face, to convey all his estate. It contained the following recitals:—

" *Whereas* the said party of the first part is indebted to R.
" H. Fish & Co., Meigs D. Benjamin, and to the several other
" persons or firms whose names are mentioned and specified
" in a certain schedule hereunto annexed, marked A., (which
" schedule is hereby declared to be and is to be accepted and
" taken as part of these presents,) or was lately indebted to
" the said persons or firms, and is now indebted to their en-
" dorsees or assigns. *And whereas* the said party of the first
" part has, by reason of long and continued sickness, been un-
" able to attend to business regularly, and by reason thereof
" his business and affairs have got into confusion and embar-
" rassment. *And whereas* several of the creditors of the said
" party of the first part have requested him to close his mer-
" cantile business, and to assign his present property for the
" use and benefit of his creditors, under the impression and be-
" lief that the said party of the first part would probably be, for
" a long time, unable to attend personally to business and
" might not survive his present sickness. *And whereas* the
" said party of the first part is desirous to comply with the
" said request, believing that it would be for the advantage of
" his creditors, and that they would release and discharge him
" from their respective debts and demands. *And whereas* the

1832.

LENTILHON
v.
MOFFAT.

" said party of the first part is, at the date and execution of
" these presents, possessed of and entitled to, &c. &c." "and
" is also possessed of one hundred shares of the capital
" stock of the North American Coal Company, worth, at par,
" two thousand five hundred dollars, now in controversy in the
" court of chancery of the State of New York, with Charles
" Snowden of the city of New York, upon a bill filed by him
" to set aside an assignment made by him of the said shares to
" the said party of the first part. *And whereas* the several
" persons and firms in the annexed schedule D. are indebted to
" the said John Moffat, &c."—" all of which premises and pro-
" perty the said party of the first part is willing and desirous
" to assign, transfer and convey to his said creditors, their en-
" dorsees or assignees, for the purpose of obtaining such re-
" lease and discharge from his said several creditors as is above
" mentioned." The party of the first part, Moffat, then con-
veys and assigns the property ; and, amongst it, all sums
which may be recovered in a suit instituted in the court of
chancery of Kentucky against Augustus M'Donald. *Haben-
dum* to the trustees, *upon the following trusts :* " that is to say
" the said one hundred shares of the capital stock of the North
" American Coal Company, subject to the decision, decree or
" order of the court of chancery of the state of New York :
" and subject also to all such costs and charges as may be de-
" creed to be paid by the said court of chancery or have been
" or may be incurred in the further prosecution of the suit re-
" specting the same. And as to all the residue of the said as-
" signed premises, to sell and dispose thereof at public or pri-
" vate sale, and to convert the same into money, and to collect,
" recover and receive the said notes, acceptances and book
" debts ; and to apply and appropriate the proceeds and avails
" thereof in manner following, that is to say : First, to pay the
" expenses attending the execution thereof, including in the
" same a reasonable compensation to the said parties of the
" second part for their labour, &c." " Second, to reserve,
" previous to each and every distribution of the said assigned
" premises to and among the creditors of the said party of the
" first part, a reasonable sum for the further prosecution of the
" said suit in chancery with the said Charles Snowden in re-

" spect to the said stock of the North American Coal Company,
" or to meet expenses which may be decreed to be paid by
" the said court, and a further reasonable sum for the prosecu-
" tion of the said suit in Kentucky against the said Augustus
" M'Donald.   Third, to pay, distribute and divide the residue
" of the said assigned premises or the proceeds thereof, rate-
" ably to and among all the creditors of the said party of the
" first part, in proportion to the amount of their respective
" debts and demands, as the same are stated in the said sche-
" dule marked A. or as the same may appear upon investiga-
" tion to be just and proper, or to or among the indorsees or
" assignees of the said debts or the securities on which the
" same are founded, if any indorsement or assignment thereof
" shall have been made : it being the intention of these presents
" and of the parties hereto, to secure a just distribution of the
" estate of the said party of the first part, in the premises here-
" by assigned, to and among all the creditors of the said party
" of the first part, in rateable proportion and to be paid to them
" as they respectively execute, under their hands and seals, a
" full release and discharge of their respective debts, claims
" and demands against the said party of the first part.  Fourth,
" In computing the amount of debts due by the said party of
" the first part, all costs and expenses incurred *bona fide* by
" any creditor in the recovery of his debt shall be added to
" and be considered part of such debt, the distribution and divi-
" dend to be made accordingly.   Provided, however, always
" and these presents are declared to be made upon the ex-
" press condition and understanding,  that unless all the credi-
" tors of the said party of the first  part will accept of the as-
" signment hereby made for the payment of their several debts,
" within sixty days from the date hereof, that the said party
" of the first part may,  by an instrument in writing to be duly
" executed  under his hand  and seal, appoint so much of the
" proceeds of the said assigned premises as may not be accept-
" ed by any creditor or creditors in pursuance of the trusts
" aforesaid, to be paid to such person and persons, being *bona
" fide* creditors of the said  party of the first part, as he
" may name and appoint in and by such instrument and in

" such proportions as he may see best and therein declare;
" and that such appointment shall take effect and go into ope-
" ration either at the expiration of the said sixty days or as
" soon as it shall be ascertained that all the creditors of the
" said party of the first part will not accept the provision here-
" by intended to be made for the payment of their debts."

The assignees covenanted, in case all the creditors of the said party of the first part did not accept the provision above mentioned, to pay the proceeds of the said assigned premises to such person and persons, being *bona fide* creditors of the said party of the first part, as he should, by the aforesaid instrument in writing, to be executed under his hand and seal, direct, limit and appoint.

It appeared by the joint answer of the assignees, that the defendant Moffat had made use of his power of appointment, by executing an instrument under his hand and seal, duly executed in the nature of an appointment, and therein declaring and making known his intention and thereby limiting and appointing that so much and such part of the proceeds of the premises assigned by the above mentioned assignment as might not or would not be accepted by any creditors, in pursuance of the provisions of the said assignment, should be paid to the persons therein mentioned in rateable proportions. The debts thus provided for amounted to about twelve thousand dollars.

It appeared from the schedules attached to the answers, that the whole of the assignor's debts exceeded seventy thousand dollars; whilst the property embraced in the assignment did not exceed, at the utmost value, thirty thousand dollars. And it was admitted, that the assignment was not intended to include all his property: for, besides some real estate (the title to which was in the name of his wife) he possessed some notes' or securities for money, which were outstanding and kept back for the support of himself and his family—his precarious state of health and the helpless condition of his family requiring him to do so. The amount thus reserved was from three to five thousand dollars.

1832.              Mr. *F. B. Cutting*, for the complainants.

LENTILHON
   *v.*             Mr. *Charles Graham*, for the defendants.
MOFFAT.

*January* 28,      THE VICE-CHANCELLOR.    Before I proceed to examine the
   1833.           question, whether the assignment can be supported against the
dissenting creditors, I must notice an objection which is started
in the answer of the defendant Moffat and been urged on
the argument of the motion, namely, that creditors who have
separate and distinct judgments cannot unite in filing a bill of
the description now before the court—inasmuch as they have
no joint or common interest in the judgments.

This objection, which goes to the frame of the bill, is clearly
not well taken.    Although the complainants have no such joint
interest, yet they have acquired similar rights with respect to
the property of their debtor.    The return of *nulla bona* to their
several executions, for the causes stated in the bill, gave each
of them a right to come into this court ; and as this right ac-
crued to them simultaneously, it was fit and proper they should
unite in availing themselves of it.    Whenever there are cre-
ditors or other persons having demands, which are cognizable
in equity and of equal standing, upon a common fund or estate,
and out of which they claim to be paid, the proper course is
for them to unite in one bill  or for one or more to file a bill in
behalf of all.    It prevents a multiplied litigation and saves ex-
pense, while justice is equally as well and even better admin-
istered through this form than by having a variety of suits be-
fore the court and all for the same object.    Such a bill is not
multifarious.    It relates to but one subject matter : the discove-
ry of the property or fund to be applied to the payment of the
debts and the manner of its distribution.

In the *Tradesman's Bank* v. *Merritt*, 1 *Paige's C. R.* 302, the
objection of misjoinder of complainants was overruled, although,
perhaps, the cause was not then in a situation in which the de-
fendant could be permitted to raise the objection successfully :
it being upon a motion to dissolve the injunction upon the bill
itself and wherein the defendant had been charged with gross
fraud.

Each creditor, whose remedy at law is exhausted, may, un-doubtedly, file a bill for himself; although it is true, that if se-veral bills are filed against the same defendant, there is to be but one receiver for all: the court taking care to protect and preserve the several legal and equitable priorities (*Rule* 193.) Nor do I see any difficulty in permitting such creditors to join in filing a bill, setting forth their several judgments and all the facts necessary to give the court jurisdiction as to each. The only matter of consequence, perhaps, which could arise, if the facts as to one of the judgments were denied and not sustained by proof, might be a dismissal of the bill as to all the complain-ants. Nevertheless, I give no opinion on this point. In the present case, the recovery of the two judgments and the re-turn of executions unsatisfied at law are admitted or proved.

We now come to the question as to the validity of the as-signment.

The minor objections raised against it are founded upon the clause allowing the assignees to retain a reasonable amount to defray the expenses of a suit concerning the shares in the North American Coal Company; and the expenses of prosecuting the suit in Kentucky. These relate to parts of the assigned pro-perty; and it appears to have been intended, that, as the as-signees were to have all the benefit, therefore the trust property in their hands should be chargeable with the expenses of these suits. There is, certainly, nothing fatal to the assignment in thus providing for contingencies. The suits might terminate unfavorably; and, as the costs would be in the nature of a debt, it was not unlawful to provide for the payment of these expenses, in order to exonerate the assignor personally, and, at the same time, protect the assignees from personal liability, in case the suits should progress after the making of the assign-ment under any express or implied authority from them.

The next, and by far the most objectionable features of the assignment, are the condition annexed to the creditors receiving a dividend from the assigned property; and, the power of ap-pointment reserved to the assignor.

It is true, that, in the event of a non-compliance on the part of the creditors, no trust results to the assignor, nor is there

1832.

LENTILHON
*v.*
MOFFAT.

any provision made, out of the property assigned, for the bene-
fit of himself or his family, until he shall have received a dis-
charge from his creditors.   In one or the other of these parti-
culars, the case differs from those in which assignments have
been adjudged, fraudulent; and it is left to depend upon the
question, whether the attempt to coerce the creditors, as indi-
cated by the terms of the instrument, connected with the cir-
cumstance that the property assigned would pay but a small
part of their debts and did not include the whole of the debt-
or's estate, is sufficient to bring it within the statute, as being
an act intended to hinder, delay or defraud the creditors of their
lawful suits, debts or demands ?

. In *Hyslop* v. *Clark*, 14 *Johns. R.* 458, it was one of the ob-
jections, (amongst others, perhaps, more glaring) that the debt-
or attempted to coerce the creditors into an acceptance of his
terms, by offering to them the benefit of the property assigned,
provided they would release their debts ; while, the assignors
reserved to themselves, in case of a refusal, the power to dispose
of and give it to such creditors as they might prefer at some
future period.   The supreme court considered this was going
further than the legitimate purposes of a voluntary assignment
would justify ; and was a power assumed by the debtor over
the creditors which the law would not tolerate—a though it
does not appear to have been, by any means, the sole ground
upon which the assignment was held to be void.

There is also another distinction between *Hyslop* v. *Clark*
and the present case, in regard to the point we are considering.
There, if any one of the creditors refused to accede to the
conditions of the assignment, the trust was to cease as to all.
It is not so in the case before the court, since it is only the
shares of those who decline the conditions of the assignment
upon which the power of appointment is declared to operate :
for it leaves those who choose to accept the terms at liberty
to receive their proportions or dividends notwithstanding the
refusal of others.

In *Austin* v. *Bell*, 20 *Johns. R.* 442, the assignment provided,
that in case any of the creditors should not, within the time limit-
ed in the deed (which deed contained a release of the assign-

ors) become parties to it, the shares or proportions of those neglecting or refusing to execute it should be paid by the trustee to the assignors themselves. It was held to be a fraudulent assignment: because, to use the language of Chief Justice *Spencer,* it was not only an attempt to coerce creditors and place the property beyond their reach on execution, but it was a reserving of property for the use of the assignors which ought to have been devoted to the payment of their debts. The present case only differs in this particular : instead of reserving the proportions of the refusing creditors to be paid to the assignor, the latter is to exercise a power of appointment over so much of the property and direct to whom, among his *bona fide* creditors, the same shall be paid to the exclusion of others.

The deed which came in question in *Seaving* v. *Brinckerhoff,* 5 *Johns. Ch. R.* 329, contained a similar clause, declaring that each creditor to whom payments should be made upon distribution of the trust property, should give a full discharge of their debts to the grantor. There was no particular trust declared in the event of a refusal ; but the deed contained a covenant, that the trustee would account to the grantor for the overplus moneys. The chancellor considered the deed as void for fraud : because it imposed a condition upon the creditors which, he pronounced, was rigorous, coercive and unjust—it not appearing to have been a conveyance of all the debtor's property, but only a specified part ; and also, because of the trust which necessarily resulted to the grantor, if the creditors refused to comply with the terms of the conveyance.

None of these cases are exactly like the one under consideration. The main difference consists in this : instead of a trust, either express or implied, in favor of the assignor, by which the property or its proceeds would come back to him, in the event of the creditors' refusal to accept of it upon the terms prescribed, the assignor, in the present assignment, reserves to himself, in such an event, the power of disposing of it, by a separate instrument of appointment, among such and so many creditors as he may designate. In other respects, it corresponds ; for there is the clause requiring the creditors to release, and it locks up the property in the hands of the assignee

beyond the reach of executions at law, not only during the time allowed for the creditors to come in, but, indefinitely— since no time is fixed when he should make the new appoint- ment.

Under these circumstances, it remains to be seen, whether there are rules, established in relation to assignments of this description or decisions which I am bound to regard as set- tling the law, broader or of more extensive application than are to be found in the cases to which we have adverted.

The recent opinion of the chancellor in the case of *Wake- man* v. *Grover and Gunn* is relied upon as developing more fully, the principles which govern. The assignment there classified the creditors ; those in class No. 1, were first to be paid in full ; those named in class No. 2, who should, within three months, agree in writing under their hands and seals to receive, in full discharge of their debts, such propor- tions thereof as could be paid out of the surplus, after paying the preferred creditors, were next to be paid ; and then, the residue was to be applied to the payment of the creditors nam- ed in class No. 3, and of all other debts of the assignors—with power to the assignees to compound with all or any of the creditors in such manner and upon such terms as they should deem proper, but not so as to interfere with the order of pre- ference declared by the assignment.

It was a question, upon the construction of the instrument, whether the creditors in the second class who might choose not to accept its terms, would be excluded from any participa- tion in the estate, or whether they might not come in as cre- ditors under the third trust and possibly receive a dividend. The chancellor thought, according to the true construction, they were excluded entirely. But whether so or not, there was a preference declared and which the assignor had a right to give. However, in the use and exercise of such right, his honor considered, that if the sole view was to secure a future benefit to the debtor himself, either by obtaining a general dis- charge from his debts or otherwise, it was an unconscientious exercise of a legal right. And he observes : if, upon the face of the assignment, the debtor avows his intention to make the

benefit, which he may derive to himself, the sole ground for giving the preference, and thus compel the whole or any portion of his creditors to submit to his terms, such an unconscientious exercise of power ought not to be sustained in a court of equity. The chancellor did not, however, think the case before him turned upon that point; and, after referring to the cases decided in the courts of the state, he evidently placed his decision upon the broad ground, that the laws of this state do not recognize a right on the part of a debtor, being insolvent, to impose any terms upon his creditors which would require from them an absolute discharge from all his debts, although he should fairly devote his property to their use and direct an equitable or rateable distribution of it among them ; and much less do they recognize the right, where he singles out favorite creditors to be first paid in full—leaving others, from whom he seeks a discharge, to receive a diminished proportion of their demands. Upon the effect of the condition in the second clause, as well as for other causes, he decreed against the assignment.

1832.

LENTILHON
v.
MOFFAT.

An able opinion on the same subject has likewise recently been pronounced by Judge *Ware*, of the district court of Maine; and in which the correct doctrine is very clearly and forcibly stated : *George v. The Brig Watchman*, see *American Jurist, Vol. 8, p.* 284. There, an assignment of a vessel came in question. It was made in trust for such creditors as should become parties and release their debts ; and, after paying such creditors, in trust to pay over the surplus to the assignor.

The learned judge examined all the American cases, and found, that, according to the New York decisions, such a condition rendered the assignment void ; in Pennsylvania, it had been held otherwise, and in some of the states, it was still an open question. He, therefore, referred to general and acknowledged principles of law for the basis of his decision.

Those principles may be summed up in this : a conveyance made for the purpose of hindering, delaying or defrauding creditors in the recovery of their debts is void at common law as well as by statute (which is merely declaratory or in affirmance of the pre-existing law,) and, any attempt on the part of the debtor to lock up his property from his creditors so

that they can never reach and enforce payment out of it, except on terms which he chooses to prescribe, is manifestly an effort to defraud them. In other words, a conveyance to trustees which should place the property beyond the reach of creditors for a definite period, or, in effect, delay their remedy against his estate for an indefinite period, unless they acceded to such terms in favor of himself as he might choose to dictate, or unless they consented to accept less than their whole debts and give a discharge, would be a conveyance made to delay or defraud them. The object is to coerce the creditor into a discharge of the debtor upon terms different from those of the contract and without the debtor's fulfilling his obligations. " The debtor," in the language of Judge *Ware* " may prefer " one creditor to another, without assigning any other reason " than his own pleasure ; and his preference will be sustained. " But, he cannot prefer himself to a creditor, nor can he com- " pel a creditor to receive in satisfaction of his debt any thing " short of the full amount due. Any act of the debtor, of which " this would be the effect, if it were carried into execution ac- " cording to its intent, is unlawful." And upon these principles, he held, in the case before him, the assignment of the vessel to be void.

Judge *Story* took the same view of the law in *Halsey* v. *Whitney*, 4 *Mason* 206, so far as he was at liberty to examine it upon general principles ; but, feeling himself bound by local decisions, he does not appear to have acted upon this doctrine. It is, however, upon this rule that the several adjudications in our own courts, and to which I have referred, have partially, if not entirely proceeded—especially the late one before Chancellor *Walworth*. I am, consequently, bound to regard it as the law of the state in relation to assignments by an insolvent or failing debtor.

In the case of *Armstrong* v. *Byrne*, lately before me, (see page 79, *ante*,) I had occasion to apply these principles, to an assignment which contained a condition requiring the creditors to release ; and this, under the circumstances, I held invalidated the instrument.

It remains to be seen how far the present case is brought

within the scope of these principles; and to what extent the assignment is affected by them.

In the first place: it does not purport to assign or convey the whole of the debtor's estate to the trustees. Indeed, the fact is admitted it did not. The instrument contains the condition, that, upon payment of their dividends, the creditors shall execute a full and complete release of their demands against the assignor; and, unless all the creditors accept of the assignment in payment of their debts within sixty days, the shares or proportions of those who shall not have accepted, may be disposed of under the power of appointment reserved by the assignor.

Now, this is clearly an attempt to place the property beyond the reach of his creditors, unless they agree to accept of it upon the terms proposed; and it is impossible not to perceive how the design of these provisions is to induce the creditors, by a species of coercion, to agree to the debtor's terms and discharge him from their debts, however deficient the property may prove towards satisfying the amounts due.

If the creditors should all refuse, the effect of the assignment would be to lock up the property or its proceeds, if not for ever, at least for an indefinite period, even as to those who might be favored by the subsequent appointment. No one can be benefitted under the deed of assignment itself, without complying with its condition. Each individual creditor, on this account, must comply: for, otherwise, the property as to him is for ever locked up. He can never reach it by execution; and, with respect to the disposition of the proceeds, in the event of a non-compliance, no particular creditor can be certain of the property's being applied to the payment of any part of his debt: the debtor having the sole power to direct to whom, among all his creditors, to how many, and in what proportion the proceeds shall be paid.

Besides—the time for exercising the power of appointment, by which some of the creditors may be benefited, is indefinite. The deed or instrument appointing the creditors who are to be thus benefited, may be executed before the expiration of sixty days, although it cannot take effect until such time has

elapsed, unless it is sooner ascertained that all the creditors refuse. But, the assignor is at liberty to defer the appointment for any length of time after the sixty days. · Nay more, he is not obliged, by any thing contained in the assignment, to make the appointment at all. He might neglect it altogether ; and there would be no way of compelling him to do it, either on behalf of the assignees or the creditors. It is not a matter of covenant on his part, but merely a power or privilege reserved to himself; and until he chooses to exercise it, the property remains locked up, by the assignment, beyond the reach of any execution at law. The creditors, by this, are hindered and delayed in their legal rights and remedies ; and the assignment is consequently void.

*I do not wish to be understood as saying, that the law will* not, in any case or under any circumstances, permit the debtor to hold out, in an assignment, an inducement to the creditors to accept of his property and give him a discharge. So long as it allows of preferences ; there may be no objection that the honest but unfortunate debtor, while he fairly devotes the whole of his property to the benefit of his creditors, should provide that all those who, within a reasonable time, agree to accept their amounts in full and give a discharge, be first paid, leaving those to be postponed, who do not choose to come in and release, with a liberty to receive their rateable proportions of the remaining property and hold their claims against him unimpaired for the balance of their debts. Such a provision in an assignment may be regarded as a mode of giving a lawful preference merely and not as an attempt at coercion for the sole purpose of benefiting himself: for, at all events, he thus appropriates the property to the creditors and reserves no future controul, disposition or resulting interest to himself. Perhaps such a provision may be regarded in the light of a composition offered to the creditors, which any one of them would be at liberty to reject, without prejudice to his legal and equitable rights and remedies against the debtor or his future estate. But the present is not such a case.

I have thus far considered the assignment by itself, without reference to the subsequent deed of appointment. The

Complainants executions were in the hands of the Sheriff when the latter instrument was executed. This took place one or two days before the return day ; and, of course, before their right to file a bill accrued. It is contended, that the particular creditors, in whose favor it was made, have acquired rights which cannot be disturbed. But, the difficulty is, how to uphold and give effect to the appointment, if the assignment itself is void? The trusts are created in the latter, and, under them, the assignees and these creditors, as *cestuis que trust,* derive title ; while, the deed of appointment is intended to carry these trusts into effect. It is true, that this appointment gives rights to these creditors more extensive than they before individually possessed ; but, still, they are rights founded upon and connected with the assignment and without which they cannot exist—and, if that instrument is against law and void as to any of the creditors, it is void *in toto.* Such is the principle of all the cases. The deed of appointment cannot be supported or carried into effect, while the assignment is to be set aside ; nor can it help to make that good which was created in fraud of the law and against the rights of the creditors.

Another consideration arises as to the effect which a decree would have, if one were now to be made which should set aside the assignment.

Are there any creditors who, by agreeing to accept its provisions before the filing of the bill, have acquired a privilege to an amount equal to what would be their dividends? It appears, that several creditors agreed in writing, before the complainants filed their bill, to come in under the assignment and release the assignor. Still, none of them have executed any release—not even those few who are named in the deed of appointment. They have, consequently, all their original rights and remedies unimpaired against the debtor and his property ; and the latter of which still remains as his, in the hands of the assignees. The title has never been fairly changed ; and, if two or three of the creditors have now, by their legal diligence, obtained liens, and are entitled to be satisfied their debts in full to the prejudice of others, it is because the law aids those who are vigilant.

As the assignees have made no distribution, nor paid over any part of the proceeds of the assigned property to the assenting creditors, they will be protected in accounting for and paying over the same to a receiver; and also, in holding the same themselves, as receivers, in case they should be appointed under the order of this court.

The result of my opinion is, that the assignment is invalid, and the property is still to be regarded as belonging to the assignor. As the complainants have acquired a lien to the amount of their judgments, they are entitled to have a receiver appointed and to be paid out of the assets.