## LAWRENCE SANGSTON, Garnishee of GEORGE W. PHILIPS, *vs.* GEORGE R. GAITHER.

A debtor executed a conveyance, in which, after reciting his indebtedness to various creditors and specifying the amount due to each, and his desire to provide for the payment of it, he conveyed certain personal property to a trustee in trust, to sell and apply the proceeds:—1st, to the payment of expenses and trustee's commissions; 2nd, to distribute to each creditor who should, within sixty days, elect to come in and share the trust, and execute a release of his claim, such dividend as he may be entitled to, in the proportion of the whole debts to the whole assets, and the dividends of such creditors, if any, as shall not so release, to be paid over to the grantor, leaving such creditors to their ordinary legal remedies against the debtor; 3rd,

to pay the surplus, after paying the debts aforesaid, to the grantor.  The deed also contained a proviso, that no creditor should have any benefit of the trust who should not, within sixty days, execute a release of all his claims and demands.  HELD, that this deed was fraudulent and void as against creditors.

An assignment for the benefit of creditors, exacting releases as the condition on which they may participate in the fund, must transfer all the debtor's estate, and the *onus* is upon the party who sets up the deed to show that it embraces all the property of the grantor.

The validity of such assignments does not depend on the insolvency of the grantor; his property may equal all his debts and yet the deed be good, if it be in other respects free from objections.

A reservation of the surplus to the grantor, after paying *all his debts*, will not avoid the assignment.

An insolvent debtor may exact releases from his creditors as the condition of being preferred, where he conveys the whole of his property for their benefit, yet any reservation of a use, control, disposition, or interest in himself before all are paid, will avoid the assignment.

A reservation of the surplus after paying the preferred creditors, is fatal to the deed.

Where a debtor is transferring his estate to trustees of his own selection for the payment of his debts, in such manner as he sees fit, and prefers some creditors to others, reserving the balance to himself, without providing for all his creditors, the inference must be that he does not intend to pay them out of that property.

It is his duty to apply all his property to the payment of all his creditors, subject to such preferences as he may declare, and if he omits this duty, the law stamps the assignment as fraudulent and void.

In this case the assignor not only does not make the property liable for all his debts after paying the preferred creditors, but he expressly prefers himself to some of the creditors, leaving them to their legal remedies against him.

The fact that the grantor might have had other property to pay his other creditors, as well as those who might reject the terms of the deed, cannot change the character which the law gives to this assignment.

If it were a question of fraud in fact, and the argument that he had other property to satisfy the other creditors could avail, it would be incumbent on those claiming under the deed to show that there was such property sufficient for this purpose.


APPEAL from Baltimore county court.

This was an *attachment on warrant*, issued at the instance of the appellee, on the 17th of April 1848, to affect the lands, tenements, goods, chattels and credits of George W. Philips,

a non-resident debtor. This attachment was laid in the hands of *Lawrence Sangston*, who appeared as garnishee and pleaded *non assumpsit* on behalf of Philips, and *nulla bona* of Philips in his hands, on which pleas issues were joined. A verdict was taken for the appellee by consent, subject to the opinion of the court on a case stated. The facts admitted by this statement are fully set out in the opinion of this court. Upon this statement of facts the court below, (LE GRAND, A. J.,) being of opinion that the appellee was entitled to recover, rendered judgment upon the verdict, in his favor, from which the garnishee appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J.

*Mayer* for the appellant.

In reference to the facts of the case it is to be remarked, that all the creditors provided for by the deed of trust, (Smith and Dyer excepted,) did, as we think is clearly stated, entitle themselves, and acceded to the provisions of the trust, as early as the 31st March 1848, seventeen days before this attachment was laid or issued. We therefore contend:

1st. The plaintiff has no right to impeach this deed, with reference to any of the cases or doctrines bearing upon trusts for creditors conditioned for releases, the transaction being between the debtor and certain named creditors, among whom the plaintiff is not, and all the creditors, in view of the trust, save one, having, before the attachment was laid, made the deed their own, by adopting the proffered settlement. Thus the recovery of the plaintiff should be limited to the dividend, apportioned to the claim of that one creditor who did not come in.

2nd. The deed operated from its date, in behalf of all acceding to it, within the period limited for releases, that period not being unreasonable. 7 *Peters*, 608. 7 *Wheat.*, 556. 11 *Wheat.*, 97. 4 *John. Ch. Rep.*, 528.

3rd. This case is covered by that of *Kettlewell vs. Stewart*, 8 *Gill*, 472.

4th. The law of the District of Columbia is to govern this case, and it is incumbent on the plaintiff to show such a law annulling the deed in question. 3 *Dana*, 495. 1 *Paige*, 220. 8 *Johns. Rep.*, 189, *Thompson vs. Ketchum*.

5th. The court has no jurisdiction in this case. The trustee is accountable as such to the local jurisdiction of the District of Columbia, and to that belongs exclusively the cognizance of this pretension of the plaintiff.

*McMahon* for the appellee, contended:

1st. That the deed of trust under which the garnishee claims to hold the funds in his hands against the plaintiff's attachment, is fraudulent and void at the common law, and under the statute 13 *Elizabeth*, ch. 5, as against the plaintiff, a creditor of Philips, the grantor, at the time of the execution of said deed; it being a deed which does not merely prefer the creditors releasing to those who do not release under it, or divide the whole property amongst those releasing, but one which *expressly* excludes the refusing creditors altogether, and *expressly* sets apart the *dividends* of the refusing creditors and reserves them to the grantor himself, and which also exacts a general release, whilst it does not profess to be, and is not shown to be, a conveyance of all the debtor's property. *Austin vs. Bell*, 20 *Johns. Rep.*, 442, and cases cited there by the court. 2 *Kent's Com.*, 533, 534, and cases there cited. *The Brig Watchman*, 1 *Ware*, 232. The cases in this court, of *McCall vs. Hinkley*, 4 *Gill*, 128. *Albert and Wife, vs. Winn and Ross*, 7 *Gill*, 446, and *Kettlewell vs. Stewart*, 8 *Gill*, 472. *Michael vs. Stiles*, 13 *Penn. Rep.*, 310. 17 *Vermont*, 310, 390, 316, 397, 398. 5 *Johns. Ch. Rep.*, 331, 332. 6 *Hill*, *N. Y. Rep.*, 441. 2 *Comstock*, 371.

2nd. That the deed being thus void under our laws, it will, although executed in Washington city, in the District of Columbia, be presumed to be void there also, in the absence of proof to show that the law of said district is otherwise. *Har-*

*per vs. Hampton*, 1 *Har. & Johns.*, 622. 3 *Cowen and Philips' Evidence*, 1137, and cases there cited.

3rd. That apart from the question of fraud, such a deed, not conveying the property absolutely for the benefit of creditors, but only giving them the benefit of the trust, upon the condition of their filing with the trustee, within sixty days after the deed, a valid and sufficient release of all claims and demands against the grantor, was one to which the assent of the creditors was not by law presumed, and which vested no rights under it in any creditor, until he had performed the condition prescribed by the deed, or, at all events, agreed to perform it and accept the terms of the deed, and that until the rights of the creditors was thus vested, the property or funds in the hands of the garnishee was open to the pursuit of the plaintiff's remedies against it as the creditor of the grantor. *Halsey vs. Whitney*, 4 *Mason*, 215. *Tompkins vs. Wheeler*, 16 *Peters*, 118. 2 *Story's Eq.*, secs. 1036, a., and 972. *Mathers vs. Pratt*, 4 *Dallas*, 224. 2 *Kent's Com.*, 532.

4th. That therefore the plaintiff's attachment of the 17th April 1848, being the first attachment, bound in the hands of the garnishee for the satifaction of his debt, not only the $230.58, set apart as the shares or dividends of the refusing creditors, but also the dividends of all other creditors who had not entitled themselves under the deed, by performance of the conditions, before the service of the attachment, or, at all events, within the sixty days; that the *onus* was upon the garnishee to show the creditors so entitled in opposition to the attachment, and in the *case stated* this must appear affirmatively and positively, and not by inference; and that the case stated does not thus show the creditors' prior title, or, at all events, not as to several of the creditors, whose shares are therefore to be added to the $230.58, the shares of the expressly refusing creditors, in determining the amount liable to the plaintiff's attachment, even if the deed be not objectionable on the ground of fraud. *Van Brunt vs. Pike and Ward*, 4 *Gill*, 274, and the cases there referred to. 2 *H. & G.*, 320. 3 *G. & J.*, 158. And 6 *G. & J.*, 266.

Tuck, J., delivered the opinion of this court.

This case began by attachment issued out of Baltimore county court, on the 17th April 1848, at the suit of the appellee, Gaither, to recover the sum of $638.20, due him by G. W. Phillips, a non-resident debtor. The original defendant did not appear to the action. But the attachment was served on the appellant, Sangston, as garnishee, who appeared and defended it; and the case went to trial on the issues joined on the said garnishee's pleas, of *non-assumpsit* and *nulla bona.* Upon these issues a verdict was taken, by consent, in favor of the appellee, for the full amount of his claim, subject to the opinion of the court on a case stated, which admits the citizenship of Gaither, the appellee, and that the debtor, Philips, was not a citizen or resident of Maryland, but that he resided in the District of Columbia, on the 7th March 1848, when his deed of trust, thereinafter referred to, was executed, and ever since; and also admits that Philips was, and is indebted, to Gaither, in the amount shown by the promissory notes on which the attachment was issued; and that Gaither is entitled to recover the same, as found by the verdict, unless the court should be of opinion, that the property or funds in the hands of the garnishee, Sangston, are not liable to said attachment; or not, at all events, to that extent: he, Sangston, being in possession of said property or funds under the following circumstances, as stated in his answers to the plaintiff's interrogatories. The garnishee in his answers states, that he was not indebted to Philips, or any one for his use or benefit, and had not, since the attachment, paid any money, or delivered any property to any one for his use and benefit: and he admits that the debtor, Philips, on the 7th March 1848, and in the city of Washington, executed to him, Sangston, a deed of trust, which is exhibited with his answer, and that he had received from the property thus conveyed to him in trust, $8402.15. He also states, that in accordance with the provisions of the deed, directing ratable distribution amongst such of the creditors as should release Philips, the grantor, within sixty days after the date of the deed, &c., he,

on the 1st November 1848, distributed the amount received amongst the releasing creditors, *retaining, however, out of it, the amount of the plaintiff's claim, to await the issue of this suit.*

The deed of trust referred to in the above answers, was made at the city of Washington, on the 7th March 1848, and there duly acknowledged and recorded. By it, Philips, after recital of his indebtedness to various firms and persons, and his desire to provide for the payment of it; and specifying the amounts due to each, conveys to Sangston, the garnishee, "all and singular, the stock in trade, goods, wares, merchandize, dry goods, stock and fixtures, and goods and chattels, of him, the said Philips, now in and about the store and premises occupied by the said Philips, at the corner of 7th street, fronting the market space in the city of Washington: And all and singular, the *choses in action*, debts, claims, bills, notes, bonds, accounts, judgments, books and other evidences of debt whatsoever, growing out of the dry goods business lately carried on by the said Philips in said city, and due, or to become due to him," in trust for the purposes thereinafter specified. In the specifications of these trusts, after giving the trustee various powers as to the sale of the property, and the collection of the debts, and the settling or compounding of the debts in such manner as he, the trustee, may deem advisable, he directs that the trust funds, thus realized, shall be applied as follows: 1st. To the payment of expenses, and the trustee's commission of five per cent. 2nd. To distribute to each creditor, who "shall have elected, within sixty days from the date of the deed, to come in and share in the trust, and shall have filed a valid and sufficient release of all claims and demands against the said Philips, in consideration thereof, with the said trustee, (and no other creditor or creditors whatsoever,) such a dividend of such assets as he shall be found entitled to, in the proportion of the whole of the debts hereinbefore scheduled, to the whole nett assets; so that the dividends, or proportions, which would have been payable to such creditors, if any, as shall not have released, as aforesaid,

shall be retained by the said trustee in such distribution, and paid over to the said Philips, his executors, administrators or assigns, leaving such creditors to their ordinary legal remedies against the said Philips." 3rd. To pay the surplus, if any, after paying the debts aforesaid, to him the said Philips, his executors, administrators or assigns: "Provided, always, and it is the true intent and meaning of these presents, that no creditor of the said Philips shall have any benefit from this trust, or receive any portion of the assets, aforesaid, who shall not within sixty days from the date of these presents, execute a release to the said Philips, &c., of and from all claims, debts and demands, whatsoever, accepting the proportion of effects which would be coming, as aforesaid, to such creditor in full satisfaction thereof, and surrendering to such trustee the evidences of such debt, claim or demand."

The deed is followed by a statement as to the assent of a large part of the creditors to the terms of the deed, and also by a statement of the trustee, as to the distribution made by him amongst the assenting creditors, and the dividends paid to each, from which it appears, that the said creditors had agreed in writing to accept the terms of the deed, and give the release; and had taken their dividends, and receipted for the same; but had given no other release or acquittance.

It is also admitted, that, of these creditors, the plaintiff Gaither, and Smith and Dyer, two of them, had refused to accept the terms of said deed; and that their dividends, which under the provisions of the deed are to be paid over to Philips, because of their refusal, amount to $230.58; (to wit: $171.18, to the plaintiff, and $59.40 to Smith and Dyer,) are still in the hands of the said garnishee, Sangston; and that the plaintiff's was the first attachment issued.

The case stated, then concludes with the following agreement: "If the court shall be of opinion that the said property, or funds, which came to the hands of the garnishee in manner aforesaid, or any part thereof, is liable to said attachment, then judgment shall be entered for the plaintiff on the verdict in this case, for the amount of said verdict, with in-

terest from 12th February 1849, or for such sum as the court shall decide is liable therefor. But if the court shall be of a contrary opinion, then judgment accordingly to be entered, and either party shall have the right to appeal from said decision."

On this statement, the court gave judgment for the plaintiff on the verdict, and for the amount found by the verdict, and from that judgment the present appeal was taken.

The case stated does not plainly show whether this was an assignment of all the debtor's property or not; nor is it stated that he was insolvent at the time, and the counsel for the appellant contends, that the *onus* of showing such a state of case is on the party claiming against the deed. We have said, in the case of *Green and Trammell vs. Trieber, (ante,* 11,*)* that an assignment for the benefit of creditors, exacting releases, as the condition on which they may participate in the fund, must transfer all the debtor's estate. It would seem, therefore, to be the duty of the party, who sets up the deed, to show that the debtor had done what the law requires to give it validity and effect. If we assume that the grantor had other property the deed would be void, for the reason that it stipulates for releases from the creditors, on a conveyance of part, only, of his estate. And if in fact he had no other property his insolvency is apparent, because there was not enough to pay even the preferred creditors, and out of that he reserves certain dividends to himself. But the validity of such instruments does not depend on the insolvency of the grantor. His property may equal all his debts, and yet the deed be good, if it does not contain provisions obnoxious to the statute. The authorities say, that a reservation to the grantor of the surplus, after paying all his debts, will not avoid the assignment; which implies that a party, not insolvent, may execute such a deed, if it be in all other respects free from objection. 9 *Gill,* 216.

Conceding the deed to be valid, but for the reservations in favor of the grantor, what is their effect? Philips reserves to himself the surplus after satisfying the creditors named in

the deed, and also the dividends, in case of deficiency, of those who may have rejected the terms proposed. We see no objection to a reservation to the grantor of what may remain after payment of all his debts. He may properly enough take to himself what, in such case, the law would grant, as a resulting trust. The argument on the part of the appellant, is, that a similar trust arises in a case like the present, and that for the same reason these reservations do not avoid the deed. Assignments, with provisions of this character, have been sustained. *Halsey vs. Whitney*, 4 *Mason*, 206. 2 *Fairfield*, 41. 5 *Pick.*, 28. 5 *New Hamp.*, 113. But there are other cases in which, with the weight of Judge Story's opinion, in 4 *Mason*, before them, eminent jurists have stated the law to be otherwise, and, as we think, with greater reason.

In *Burd vs. Smith*, 4 *Dall.*, 76, the deed provided that the trustees should pay to the grantor the dividends that would have gone to the refusing creditors, "to the intent that he might therewith and thereout compound with and satisfy such creditors." There were no preferences declared in that assignment, except in favor of those who might assent and execute releases, but all the creditors might have come in under its terms. Yet, notwithstanding the honest purpose avowed for retaining these dividends, the deed was held to be void. In the present case the debtor, so far from stating any such motive, expressly declares, that the refusing creditors are to be left to their legal remedies against himself. Although the judges, in that case, gave various reasons for their judgment, the main point decided was upon this reservation, as is stated by *Tilghman C. J., in Wilt vs. Franklin*, 1 *Binney*, 515.

In *Hyslop vs. Clarke*, 14 *Johns.*, 458, the deed, in effect, reserved to the debtor the power to declare preferences, in case of the refusal of the creditors to release their claims, and it was held to be void on that account. The deed in the case of *Lentilhon vs. Moffat*, 1 *Edw. Ch. Rep.*, 451, is of the same character, and was also said to be void. We do not perceive any substantial distinction between such

7    v.3

reservations, as those last mentioned, and one that secures the same power to the debtor, (though without expressing his purpose,) by enabling him, out of the trust funds, to pay whom he pleases, if, perchance, he should choose to pay any of his creditors after having omitted to provide for them in the deed. If the deed in this case had expressly stated, that the debtor's object in making the reservations was to declare future trusts in respect thereto, it would have been void upon the authority of these cases.

Spencer, Ch. J., *in Austin vs. Bell*, 20 *Johns.*, 450, uses this language: "In this case, on a refusal by any of the creditors to execute the assignment, their shares in the division of the property assigned were to revert to the assignors. In other words it was to be at their absolute disposal, to apply to their own use, or to pay to their creditors, as they pleased. This is a reservation of property to their own private use and benefit, which ought to have been devoted to the payment of debts."

The assignment in 6 *Hill*, 438, *Goodrich vs. Downs*, directed, "that the surplus, if any, after paying certain creditors therein named, should be returned to the assignor, his heirs," &c., &c. The court said: "If the debtor secures any thing to himself before all the debts are paid, the deed is void." The case of *Barney vs. Griffin*, 2 *Comstock*, 370, presents an assignment containing a similar reservation. The court there said: "We need go no further to see that this was a fraud upon the plaintiff, and the other creditors, who were not provided for by the deed. The property was placed beyond their process, in the hands of men who were not accountable to them, and upon a trust which was in part for the benefit of the debtor." And the assignment, in 5 *Johns. Ch. Rep.*, 329, *Seaving vs. Brinkerhoff*, was set aside on account of a reservation of the "surplus moneys," after paying the claims of the assenting and releasing creditors, because, among other reasons, this provision placed so much of the fund at the disposal of the debtor, before his creditors were fully paid. *Thomas vs. Jenks*, 5 *Rawle*, 225. *Dana vs. Lull*, 17 *Ver-*

*mont,* 390, and *Hall vs. Denison,* 17 *Vermont,* 310, are to the same effect.

In 17 *Vermont,* 390, it was held that an *implied* trust, resulting to the debtor for the surplus in the hands of the trustee after the payment of creditors specified in the assignment, would have the same legal effect upon the instrument as if the surplus were expressly reserved, because of the duty which the law imposes on the debtor, to subject all his estate to the payment of his debts. In the deed before us there is an express reservation, but this case shows the extent to which the doctrine has been carried in Vermont. The extracts from the opinions filed in 4 *Gill,* 136, 158; 7 *Gill,* 478; 8 *Gill,* 502; quoted in *Green and Trammell vs. Trieber, (ante.* 35, 36,) also show that deeds with such provisions are void. And the reason is, because the debtor takes to himself what the law, in such cases, gives to his creditors. They are entitled to the benefit of the whole estate, and cannot be compelled to resort to a part. Where is the difference between a deed that does not devote all the debtor's property to the payment of his debts, and one that makes a transfer of the whole, in the first instance, and then takes back a part in the form of a residue, or surplus, before all the creditors are paid? In neither case do the creditors get the benefit of all his property. We are now treating of the legal intent of such a deed. When an insolvent debtor is transferring his estate to trustees of his own selection, for the payment of his debts in such manner as he sees fit, and prefers some creditors to others, reserving the balance to himself, without providing for all his creditors, the inference must be that he does not intend to pay them out of that property. Because, if this were his purpose, the most proper and reasonable mode of accomplishing it would be, to make provision for all in the same deed. *Birely vs. Staley,* 5 *Gill and Johns.,* 456. It is his duty so to apply his property, subject, however, to such preferences as he may declare; and it is because he omits this duty that the law stamps the assignment as fraudulent and void. In the present case the assignor not only does not make the property liable for all his

debts, after paying the preferred creditors, but he expressly prefers himself to some of the creditors, who are left to their legal remedies against him.

It was also said, that it would be as well for the creditors that this should be so, because the fund is liable to process at their instance, while in the hands of the trustees. This is true, but the effect is to lock up this surplus until the preferred creditors are paid off, and the others are not only hindered and delayed in their remedies, but they are necessarily involved in controversy, which would have been avoided if the debtor had given up all his property, without any reservation, for the benefit of those not specifically protected by the terms of the trust. An insolvent debtor cannot assign his property for his own benefit. Such a deed is void as against creditors. But the fraudulent design may be readily accomplished if such a reservation as this be valid. He would have only to make an assignment for the benefit of a few creditors, provided they assented and executed releases, and reserve the residue to himself, which might constitute much the larger portion of his estate. The fund in the hands of the trustees would be liable to the process of creditors, but the title to the estate would pass to the trustees, the property could not be touched, the remedy would be only against them as trustees. He might thus change the property into money placed in the hands of persons whom they had never credited, and against whom their process might be unavailing, when, if allowed to proceed against the property on the ground of fraud in the assignment, they might secure their claims.

And as regards the creditors named in the deed, any transfer short of his entire interest and estate in the property, might have the effect of coercing them to agree to the debtor's terms, and discharge him from their claims, however deficient the property might prove towards satisfying the amounts due, which would be unjust and pernicious in tendency.

Upon a careful examination of the cases, we are of opinion, on principle as well as authority, that, conceding that an insolvent debtor may exact releases from his creditors as the

condition of being preferred, in the distribution of his estate, where he conveys the whole of his property for their benefit, yet any reservation of a use, control, disposition or interest in himself, before all are paid, will avoid the assignment. *Chancellor Kent*, 2 *Com.*, 534, thus states his conclusion: "If the condition of the assignment be, that the share which would otherwise belong to the creditor who should come in and accede to the terms and release, shall, on his refusal or default, be paid back to the debtor, or placed at his disposal by the trustees, it is deemed to be oppressive and fraudulent, and destroys the validity of the assignment, at least, as against the dissenting creditors." And on page 535, *note*, in reference to a reservation of the surplus, after paying preferred creditors, he says: "The reservation would now, generally, and it ought to be everywhere, fatal to the instrument."

It was also suggested, on the part of the appellant, that the grantor might have had other property in Washington or elsewhere, to pay his other creditors, as well as those who might reject the terms of the deed. We think that this view of the case, cannot change the character which the law gives to this assignment. If it were a question of fraud in fact, and this argument could avail, it would be incumbent on those claiming under the deed, to show that there was other property of the debtor sufficient for this purpose. *Birely vs. Staley,* 5 *G. & J.,* 455. *Worthington vs. Shipley,* 5 *Gill,* 449.

There is nothing before us to show that the laws of the District of Columbia, on this subject, are different from ours, even if it were clear that the case should be decided by those laws. 7 *Gill,* 377. Applying the law as it exists in Maryland, according to our understanding of it, the judgment must be affirmed.

*Judgment affirmed.*