## Jas. Malcolm, Perm't Trustee of Thos. Sprigg and Henry Meseke, *vs.* Jas. Hodges.

The validity of a deed of trust for the benefit of creditors must be determined by the *deed itself,* without reference to extrinsic facts.

A deed from two parties, "copartners in trade," conveying "all and singular the stock of goods, machinery, book-accounts owing to" the grantors, "of whatsoever consisting," to hold the same *in trust,* to sell and apply the proceeds in part to such creditors as shall release the grantors "from all their liabilities, *individual as well as copartnership,*" operates as a conveyance of all the grantor's property, both *joint and separate.*

An *implied* reservation of the surplus, after paying the releasing or preferred creditors, to the grantor, avoids the deed equally with an *express* reservation, and the court cannot look outside of the deed to ascertain whether there will be a surplus or not.

Such an assignment, to be valid, must convey all the property of the debtor,

and *in terms* dedicate the whole for the benefit of his creditors, subject to such preferences as may be declared in the deed.

A deed which makes no disposition of the surplus, after paying the releasing creditors, is *void*, because there is an implied reservation of such surplus to the grantor.

APPEAL from the Court of Chancery.

The bill in this case was filed on the 15th of July 1850, by the appellant, as permanent trustee in insolvency of Sprigg & Meseke, to vacate a deed executed by the said insolvents to the appellee, on the 2nd of June 1849. The bill assails the deed as void both at common law, under the statute of *Elizabeth*, and under the insolvent laws. Sprigg & Meseke applied for the benefit of the insolvent laws on the 5th of July 1849, and the appellant was duly appointed their permanent trustee on the 11th of August following.

The deed, which is filed as an exhibit with the bill, is dated the 2nd of June 1849, and purports to be an "indenture between Thomas Sprigg and Henry Meseke, copartners, trading in the name, style and firm of Sprigg & Meseke," and James Hodges. It recites, that "whereas, the said Sprigg & Meseke are indebted to sundry persons, and being unable to pay their liabilities, the said Sprigg & Meseke have hereby assigned all their estate and effects unto the said Hodges, upon trust, for the benefit of their creditors, to be distributed, *pro rata*, according to their claims, among them, or so many of them as will sign a release, on or before the 2nd of July next succeeding the date above written to the said Sprigg & Meseke, to them." It then, in consideration of the premises, conveys to Hodges "all and singular the stock of goods, machinery, book-accounts owing to said Sprigg & Meseke, and all and singular the estate and effects of the said Sprigg & Meseke, of whatsoever consisting: To have and to hold the said property, estate and effects of the said Sprigg & Meseke unto the said James Hodges, his executors, administrators and assigns," *in trust*, to sell the same at public auction or private sale, as the trustee in his discretion may deem best, and collect and apply the proceeds to pay, *first*, the expenses of the sale and the trust; *secondly*, the trustee's commission of eight *per cent.*, and *thirdly*, to distribute

the residue *"pro rata,* according to their claims, among those of the said Sprigg & Meseke's creditors who shall, on or before the 2nd of July next succeeding the date first above hereinbefore written, sign a release to the said Thomas Sprigg and to the said Henry Meseke, from all their liabilities, individual as well as copartnership, to them the said creditors." It also contains a power of attorney to Hodges to collect the debts due the grantors and to compound for the same.

The answer of Hodges states, that shortly before the 2nd of June 1849, Sprigg & Meseke called a meeting of their creditors, for the purpose of laying before them a statement of their assets and liabilities, and getting an extension upon their liabilities, averring at the time that they were able and would pay all their debts if time was given them; that at this meeting respondent, being a creditor, met with a large majority of the creditors, who then examined into the affairs of Sprigg & Meseke, and unanimously determined, it would be for the interest and advantage of all and each of the creditors of said parties that they should at once execute an assignment of all their effects for the benefit of their creditors, which they agreed to do, and accordingly executed the deed in question; that at this meeting, all the creditors present believed Sprigg & Meseke ought to be released upon the execution of said deed, and agreed themselves so to release them; that after the execution of this deed, respondent addressed letters to all the non-resident creditors, informing them of its provisions, and all of them, except two, whose claims do not amount to one-fourth of the grantors' liabilities, have agreed to come in under it. The answer also denies that the deed is void under the insolvent laws.

A replication was filed and the cause submitted to the chancellor (JOHNSON) upon bill, answer and replication, who delivered the following opinion, accompanying his decree dismissing the bill:

"This cause was submitted on the part of the complainant during the sittings of the term, and at the close of the sittings is laid before the chancellor under the rule for decision.

"After the repeated adjudications of the Court of Appeals upon the subject of the validity or invalidity of deeds contain-

ing provisions similar to those to be found in this deed, I deem it unnecessary to occupy time or space in an argument, and will merely say, that according to my understanding of the case of *Sangston vs. Gaither*, 3 *Md. Rep.*, 40, the deed in this case is valid.

" It does convey all the estate and property of the grantors of every kind and description, and there is no reservation of the surplus to them after paying the preferred, or any class of creditors. The deed, therefore, is not void at common law or under the statute of *Elizabeth*, and there being no evidence in support of the allegations of the bill which assail it as void under the insolvent laws, the complainant does not make out a title to relief in any way, and his bill must be dismissed."

From the decree dismissing his bill the complainant appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*William H. Norris* and *J. M. Campbell* for the appellant, argued, that the deed in question was void:

1st. Because while under it nothing passes to the trustee for the use of the releasing creditors except the partnership property of the grantors, it demands from the releasing creditors a release to the grantors of all their liabilities to such creditors, individual as well as partnership. That such a deed is void has been expressly adjudicated, and this although the debtors had no separate property. 5 *Rawle*, 221, *Thomas vs. Jenks*. 6 *Watts & Sergt.*, 300, *Hennessy vs. The Western Bank*. 3 *Md. Rep.*, 12, *Green & Trammell, vs. Trieber*. It seems to be too plain for argument, that when two recite a joint interest and joint liabilities, and a style or firm, and only mention the estate and effects of such style or firm as intended to be granted, that it would be impossible to suppose that any thing was intended to be covered by the grant but what belonged to the style or firm ownership: otherwise every deed by partners would be held to convey all the joint and separate estate of the partners, if the style of the partnership chanced to correspond with the surnames of the individual partners. But when you pass from the granting part of the deed to the *habendum*,

it will be seen that the rule of construction coincides with the knowledge of the grantors and violates no possible intention in fact; for in stipulating for releases it is from all their liabilities, "*individual* as well as *co-partnership*," thus recognising their appreciation of the distinction between their private and co-partnership relations as respects debts, and if this was before their minds, the failure to convey also *thus distinctly and distributively* evinces a clear purpose to reserve from the grant their individual estate. The next question is, assuming the deed does not convey the individual property, is it good until the parties assailing it prove that there is individual estate which has not been conveyed? If such is the duty of the party assailing the deed, then a deed from a partnership conveying a single chattel is *prima facie* good until the parties assailing it prove there were other chattels or assets. And can such a principle be law in cases where, for the *permission* given to exact releases, the party is required to make it appear that he has conveyed *all his estate?* Must not the operative transfer in law be in fact of all the party's property, stated or unstated, known or unknown? Can a law levelled against fraudulent reservation be otherwise administered? Must not the grantor *show* conclusively that he has complied with the condition? It therefore seems to us that it ought not to be admissible for a grantor to prove that the specification includes all his property, where the terms of the grant do not in themselves convey all. The rule being directed against fraudulent reservations, they are allowed too much liberty of accomplishment when a party is permitted to narrow the terms of his grant from a general transfer into a particular one, and then to prove that practically it is a general transfer. The simplicity of fair dealing requires that the proof of compliance with the rule *should be found in the terms of the grant.* This is sufficiently indicated in the cases of *Green & Trammell, vs. Trieber,* 3 *Md. Rep.,* 12, and *Sangston vs. Gaither, Ibid.,* 41, independently of the other authorities.

2nd. Because the deed makes no provision for paying any surplus remaining after the claims of the releasing creditors shall have been satisfied over to those creditors who may refuse

to sign a release, and therefore any surplus that might remain in the hands of the trustee would revert to the grantors them-selves. *3 Md. Rep.*, 41, *Sangston vs. Gaither.* 17 *Verm.*, 390, *Dana vs. Lull.* 7 *Md. Rep.*, 380, *American Exchange Bank vs. Inloes, Garn. of Turnbull & Co.* The effort to sustain this deed as a *composition deed* is met with many insuperable difficulties, which need not be noticed; for whether there be a valid composition or not as to certain creditors, it is admitted there were *two* who did *not* compound, and whether there were or not any thus dissenting, it is not perceived how that makes a deed good which makes no provision for paying any surplus, after the claims of the releasing creditors have been satisfied, to those who may refuse to sign a release. This court is not sitting over the distribution of assets; equity don't distribute insolvent estates. 3 *Md. Rep.*, 464, *Manahan & Gorman, vs. Sammon & Thurston.* If the failure to make this provision makes the deed void, the composition and release is a matter between the insolvent trustees and the trustees, and the grantor and the composition creditors, which only comes up when a distribution is gone into. If the deed is valid as *between the parties* the insolvent trustee will pay the surplus to the grantors, but he has none the less right to set the deed aside. That nobody will be injured by its being treated as valid, is a question with which a court of equity has no concern; that only arises when creditors are notified to file their claims and a distribution is to be made. It cannot be legally known until then whether there are *dissenting* creditors or not.

*St. George W. Teackle* for the appellee, argued:

1st. That the *first* objection to the validity of the deed is not supported by any evidence in the cause, or by the provision of the deed itself, but on the contrary, the deed itself conveys not only all the *partnership property* of the grantors, but also *all their individual property;* for, after granting to the trustee "all and singular the stock of goods, machinery, book-accounts owing to said Sprigg & Meseke," the deed further says, "*and all and singular the estate and effects of the said Sprigg & Meseke, of whatsoever consisting.*" Now upon the well estab-

lished rule of interpretation in regard to deeds, that every deed
is to be construed as strongly against the grantor as possible,
can it be doubted that the individual estate and property of
the grantors in this deed passed to the trustee under its provi-
sions? Such was the construction put upon the deed by the
learned chancellor who decided this case below. But even if
no individual property did pass by the deed, can it be success-
fully contended for *as law in Maryland* that this deed is void
on that account, without some evidence to show that the gran-
tors had some individual property? Is the court to presume
that they had individual property, for the purpose of establishing
upon that presumption of fact (not sustained by any allegation
or proof in the cause) the legal conclusion, that the deed is
thereby avoided, and that too upon the ground of fraud?
Such a doctrine, it is respectfully submitted, will not, upon a
careful examination, be found to be supported by either of the
cases referred to by the counsel on the other side. No such
point was presented for the decision of the court by the record
in either of those cases.

2nd. The *second* objection to the deed is equally untenable
and unsupported by authority. The deed reserves no surplus
to the grantors or any one else, and the objection rests upon
the ground of a surplus by way of resulting trust to the gran-
tors. This point is liable to the same objection as to the *first,*
*viz.,* that there is no fact in the case to show, or from which
it could be rationally presumed, that any of the creditors would
refuse to take under the provisions of the deed of trust, or if
any would have so refused, whether their dividends would
have been more than sufficient to pay in full all the claims of
the assenting creditors, and leave a surplus for the grantors.
And yet to support this *point* the court *must presume* both
these facts, and that too in opposition to the fact stated in the
answer responsive to the bill, and not excepted to by the com-
plainant, that all of the creditors at the meeting called to inves-
tigate the affairs of the grantors, they being a large majority
in value of all the creditors, advised and accepted the deed,
and agreed to abide by its provisions. We submit, that the
cases of *Sangston vs. Gaither,* and *Dana vs. Lull,* decide no

such doctrine. But we say the present case stands upon grounds totally different and clearly distinguishable from those on which any of the cases cited on the other side were decided. None of them decide or intimate that if the creditors *agree* with their debtors to take less than the full amount of their claims and release them, that such an agreement, if based on a valuable consideration, would not be valid and binding against such creditors, nor can any case be found going to that extent. Upon such an hypothesis as this there could be no such thing as valid *deeds of composition* between creditors and debtors, and yet the books are full of them, and the principles governing them are so familiar as not to require the citation of authority. Now apply these principles to the present case, and it will be found that the deed in question is a deed of *composition* between creditors and debtors, and not a deed having in it or about it a single feature obnoxious to any of the provisions of the *statute of Elizabeth*. (The learned counsel then further argued, that from the facts of the case, as disclosed by the *answer*, this was a *composition deed*.)

TUCK, J., delivered the opinion of this court.

The appellant, as trustee of Sprigg & Meseke, under the insolvent laws, filed a bill against the appellee to vacate a deed from Sprigg & Meseke to him, as trustee, for the benefit of their creditors, on the terms and conditions mentioned in the deed. The case was heard on bill, answer and replication, before the chancellor, who dismissed the bill, being of opinion, that as the conveyance transferred all the property of the grantors, and contained no reservation to them of any surplus, after paying the preferred or any class of creditors, it was not void.

The validity of the deed must be determined without regard to the surrounding and other circumstances averred in the answer. If admissible for any purpose they are not proved. " We are to look to the character with which the law stamps the deed, without reference to extrinsic facts as to motive. If the law imputes to the grantor a design in making the deed, no evidence of intention can change the presumption. If the

law declares the deed to be void, it is no matter how the question of fraud in fact may stand.'' 3 *Md. Rep.*, 40, *Green vs. Trieber*.

Upon consideration of the deed we are of opinion, with the chancellor, that if good in other respects it would operate as a conveyance of all the grantors' property, joint and separate. The terms are not very clear; but, construing all its parts together, the legal effect of the granting clause and the *habendum* is to vest in the grantee title to all their property and effects of every description. But we think the instrument is void as against the appellant, representing the creditors of the grantors, because the necessary effect of the trusts declared therein is to secure to the grantors any surplus that may remain, after paying the claims of those creditors who may come in under its terms within the time limited. The law is now too well settled to admit of dispute, that deeds of this description must not only convey all the property of the debtor, but they must, in terms, dedicate the whole for the benefit of the creditors, subject to such preferences as may be declared in the deed. There must be no reservation to the debtor, express or implied. We cannot look outside the assignment to ascertain whether there will be a surplus or not. That would make the efficacy of the instrument depend on extrinsic circumstances, when the law requires that its intent shall be gathered from its face. This deed, in express terms, restricts the benefits designed to be conferred to those creditors who may come in within a certain time and execute releases. Nothing is said of the surplus. Now suppose creditors, to a very small amount, assent, and that all the rest stand out, what becomes of the surplus of the property when those few who may assent are fully paid? Does it not belong to the grantors as a resulting trust? Nothing, in our opinion, can be clearer. The refusing creditors could not claim it under the deed, and it would not belong to the grantee, as in cases of deeds where the grantee is not a trustee for others. It is true the other creditors might prosecute their claims against the trustee, in respect of this surplus, but not in reliance upon the assignment, which they have repudiated. They would claim to be paid out of the fund, not as

theirs by the deed, but as the property of the grantors, their debtors, in the hands of the trustee for the use of the grantors; and this pretension, probably, could be asserted only by process of law, to which, as we have said in 3 *Md. Rep.*, 52, the grantors have no right to compel them to resort.

The view here expressed was affirmed in *Dana vs. Lull*, 17 *Vermont*, 390, referred to in 3 *Md. Rep.*, 51. The case then before the court did not require us, in terms, to go as far as the Vermont doctrine, but we have no doubt of its correctness, upon principle, and so intimated. If such deeds, as the one before us, are valid, fraudulent transfers might easily be made by granting preferences to a few creditors, of small amount, and omitting all mention of the surplus. The operation would be, that after the property was sold and the preferences satisfied, the trustee would return the residue to the debtor before the other creditors could take measures to arrest it in his hands for the payment of their claims. To prevent such devices the law requires that the deed, on its face, shall show that the debtor can get nothing for himself, so long as a creditor remains unpaid.

This case is substantially the same as *Dana vs. Lull*, and satisfied that it was decided on proper grounds, we adopt the reasoning there employed as conclusive of the question arising on the assignment now in controversy.

> *Decree reversed, and cause transmitted*
> *to the circuit court of Baltimore city.*