STEWART (SONNEBORN v.). See Case No. 13,176.

## Case No. 13,437.
### STEWART et al. v. SPENSER et al.
### [1 Curt. 157; [1] 1 Am. Law Reg. 520.]
Circuit Court, D. Rhode Island. June Term, 1852.

INSOLVENCY—ASSIGNMENT FOR BENEFIT OF CREDITORS—WHEN VOID—STIPULATION FOR RELEASE.

1. An assignment for the benefit of creditors, made by a debtor who has absconded to a foreign country, carrying with him a large sum of money, is fraudulent and void as to creditors, if it contains a stipulation for a release as a condition of obtaining a preference under the assignment.

[Cited in Hastings v. Spenser, Case No. 6,201.]

[Cited in First Nat. Bank v. Ridenour (Kan. Sup.) 27 Pac. 154; Greene v. Sprague Manuf'g Co., 52 Conn. 394; Therasson v. Hickok, 37 Vt. 455.]

2. Whether an insolvent debtor who assigns but a part of his property for the benefit of all his creditors, can stipulate for a release in Rhode Island, quære?

This was a bill in equity, brought by [Alexander T. Stewart and others] certain judgment creditors of a mercantile firm of Horton & Brother, of the city of Providence, against Gideon L. Spenser, and Thomas Pierce, Jr., and others, to set aside an assignment of property made by Horton & Brother, for the benefit of their creditors. As the decision turned, in part, on the particular terms of the deed, its substance is here given.

"Know all men by these presents: That we, Theodore Horton and Ferdinand Horton, both of the city and county of Providence, state of Rhode Island, copartners in trade under the name and style of Horton & Brother, in consideration of the trusts and provisions hereinafter declared and made for the benefit of the creditors of said firm, and of one dollar to us paid by Gideon L. Spenser, of North Providence, and Thomas Pierce, Jr., of Providence, do by these presents give, grant, bargain, sell, assign, set

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

over, and convey unto them, the said Spenser and Pierce, their heirs, executors, administrators, and assigns, all our right, title, and interest, &c., (describing the property.) In special trust, however, for the uses and purposes following, to wit: In trust that they shall, as soon as reasonably it can be done, make sale at public auction or otherwise, of the goods, chattels, and real estate aforesaid, and so far as practicable, make collection of the claims and demands aforesaid, and the proceeds of such sales and collections after defraying therefrom the expenses incident to the making of this assignment, and the executing of the trusts herein declared, including herein a reasonable compensation for their services, they shall apply and appropriate in the manner and in the order following, to wit:

"First. They shall, out of said proceeds, pay in full, if said proceeds be sufficient, otherwise ratably, the just claims now holden against us by the persons, firms, and companies following, namely: The Providence Dyeing, Bleaching, and Calendering Co., &c., (specifying certain preferred creditors.)

"Second. They shall pay out of the residue of said proceeds in full, if sufficient, otherwise ratably, the just demands of all those creditors of the firm of Horton & Brother, who shall, within four months from the date hereof, present to our assignees their claims, with satisfactory proofs of correctness, and execute and deliver for us a release or releases of their respective claims against the undersigned. And

"Third. They shall divide and distribute the residue of said proceeds, if any there be, after making payments as above ordered, ratably and in proportion to their respective claims, among those of our creditors who shall, within eight months from the date hereof, present to our assignees their claims, with satisfactory proofs of correctness. And we do hereby severally and jointly constitute and appoint the said Spenser and said Pierce our attorneys, with full power and authority, for us and in our names to do and perform all acts proper and necessary in the executing of the trusts herein declared."

The general allegation in the bill was, that this assignment was fraudulent and void as against the creditors of Horton & Brother; and the plaintiffs pray that this obstruction to the levy of their executions may be removed by a decree of the court, declaring it to be void as to creditors, and requiring it to be delivered up to be cancelled.

CURTIS, Circuit Justice. The first question is, whether this deed of assignment is fraudulent and void as to creditors. In deciding it, not merely the terms of the deed itself, but all extraneous facts which have a bearing on the legal result, must be taken into view. A conveyance, made by an insolvent debtor, may be fraudulent on its face, containing provisions which the law deems necessarily, and under all circumstances, fraudulent in their operation; or it may be void as against creditors solely, by reason of matter dehors the deed, from a want of consideration, or of good faith; or it may have the effect to defeat or delay creditors by reason of some provisions in the deed, operating in connection with particular states of fact shown to exist out of the deed, though the same provision, in a deed, not connected with such other extraneous facts, would not hinder or delay creditors, and so would not render the deed invalid.

Before looking into the deed itself, therefore, it is necessary to ascertain the state of facts which accompanied its execution, and upon which it was intended to, and must operate. These facts are, that Horton & Brother, in August, September, and October, 1850, generally under representations that they were worth forty thousand dollars over and beyond enough to pay their debts, obtained credit for merchandise to the extent of upwards of sixty-two thousand dollars; that on the 4th day of December, 1850, without any just cause, they stopped payment; that from that time down to the eighth day of March, 1851, when the assignment was made, no considerable amount of their debts having come to maturity so that they could be proceeded against at law, they continued to make large sales, and thereby realized in money a very large sum, shown by the proof to be nearly, if not quite, fifty thousand dollars; that they ceased to keep a bank account, and retained the proceeds of their sales in their own possession; that they made proposals to their creditors to compromise with them, but these proposals the creditors refused to entertain, except upon condition of first examining their books, which was declined; that one of them professed to friends, and probably entertained apprehensions, that he might be proceeded against criminally for fraud in obtaining credit, and was in feeble health, and through Spenser, one of the assignees, made inquiries respecting a place of refuge from his creditors, and through the same agency, arrangements were made which resulted in the flight presently to be mentioned. On the evening of Saturday, the eighth day of March, they executed the deed of assignment, which, by previous concert between them and the assignees, was not delivered until the next Monday morning, and immediately after twelve o'clock of the night of Saturday, they left Providence secretly, got on board a vessel in the bay bound for Cuba, going under feigned names, conveying with them the money they had received from the sales of their merchandise and other property, and have not since returned; both the assignees knew when they agreed to accept the assignment, that the Hortons were about to leave the state, and when they did accept it, they knew they had left, and had good reasons to believe they had sailed for

Cuba. They had also good reason to believe they had carried away money; but how much they were not informed, until by subsequent investigation they ascertained the extent of their sales, and that no money, and no considerable amount of debts receivable were left behind. The property assigned is not sufficient to pay their debts; but if their whole property had been honestly appropriated to this purpose, it would have been sufficient to pay every creditor in full. Such were the facts which surrounded this deed, and upon which it was designed to operate.

The first feature in this deed requiring notice, is the clause which secures a preference to those creditors who should release the assignors within four months. There can be no doubt respecting the intention with which this clause was inserted, or the object which it was calculated to effect. Its design was to induce creditors to release them, and it was adapted to produce this effect by holding out the expectation of securing a larger dividend, or payment in full, by compliance with this condition. The question is, whether a debtor, who has absconded from the country, carrying with him a very large sum of money, has a right so to frame a conveyance of the residue of his property, as to secure to himself a chance of a release. To determine this question, it would seem only to be necessary to consider what the object is, which such a debtor is attempting to reach, and what are the means by which he endeavors to reach it. That object is the permanent and final withdrawal from his creditors of the money he has fraudulently carried away with him, and the safe and effectual reservation of it to his own use. And the means of accomplishing this object are, to marshal the residue of his property, and by means of it, to create inducements to creditors to give their assent to his unjust design. Now it may be admitted that a debtor has a legal right to pay one creditor in preference to another, when he cannot pay both, and consequently that he may make preferences in assignments of property made for the benefit of creditors. I think, also, it must be taken to be settled law for this case, that a debtor may stipulate for a release, by which his future earnings will be discharged. Brashear v. West, 7 Pet. [32 U. S.] 608; Halsey v. Fairbanks [Case No. 5,964]. But it would be as inconsistent with natural right, as with the principles of the common law, and the express language of the 13 Eliz. c. 5, reenacted in Rhode Island, to hold, that however innocent a stipulation for a release may be in itself, and under many circumstances, yet, if it be designed to be an instrument of fraud, and calculated to enable the debtor to withdraw from his creditors what it is his legal and moral duty to pay them, such a deed can stand. The object itself is an unlawful one, and taints with fraud any means, however innocent in themselves, which are laid hold of to accomplish it. A debtor who can pay in full, but who forms the fraudulent design to pay but a part of his debts, and keep the residue of his property to his own use, and makes a conveyance designed to aid him, and containing provisions capable of aiding him, in dishonestly withholding from his creditors what belongs to them, is within the very words, as well as the mischief, of the 13 Eliz. c. 5. Such a deed is made and contrived of fraud, covin, collusion, or guile, to the intent or purpose to delay, hinder, or defraud creditors. That these debtors were able to pay all their debts in full, and fraudulently absconded with a great sum of money, is scarcely controverted; that they entertained the design permanently to withdraw this money from their creditors, and made this assignment, instead of leaving the property to be disposed of by the law, partly in order to obtain a release, I am satisfied by the proof. It would be, to the last degree, weak and blind not to perceive a fraudulent intent on their part, pervading their whole conduct. It is correctly argued that their intent, however bad, cannot vitiate a legal conveyance. But the question whether the conveyance is legal or not, depends upon the fact whether it is capable of effectuating or aiding to execute their unlawful intent to hinder and defeat creditors. If so, it is void, though the same deed, made with an honest purpose, might be good. An unlawful intent is not predicable of an act which is itself lawful, and cannot, by any possibility, produce an unlawful effect. But if a deed may have an unlawful effect, if it may be an instrument to aid in the execution of an illegal design, then it is a legitimate inquiry whether, in point of fact, such a design existed, and whether the deed was made in pursuance of it; and if found to be so, it is unlawful and void. And in this case, the Hortons, entertaining the unlawful design to hinder and defeat their creditors, by withdrawing from their reach a large sum of money and appropriating it to their own use, and having made this deed partly in consequence of that design, and to aid them in its complete execution, and the deed containing a provision capable of thus aiding them, it is forbidden by the law of Rhode Island, and is void as to creditors. Suppose one of the assignees, with the knowledge of facts they had, had purchased and paid a full consideration for a piece of land belonging to the Hortons at the time this assignment was made; it could not be doubted that a deed thereof would be void as to creditors, for the reason that its design must have been to convert land into money, so that it could be withdrawn from creditors; so this deed is void, because its design is, not to enable them to carry away the money, but what is also unlawful, to keep it to their own use.

It will be perceived, therefore, that this case stands upon an actual fraud on the part of the debtor, and a deed made with intent to execute that fraud, and capable of aid-

ing in its execution, and that the whole extent to which it is necessary to go, is to hold that an absconding debtor cannot so marshal property which he leaves within the state, as to enable himself to keep to his own use, what he fraudulently carries away with him. For such a purpose, he has no power of control over his property, and if he attempt to exercise it, his act is void as to creditors. It is quite unnecessary, therefore, to examine the numerous decisions which have been cited. They are all consistent with the conclusion at which I have arrived, however widely they may differ among themselves respecting the rules as to assignments for benefit of creditors in different states. Halsey v. Fairbanks [supra] was a case where all actual fraudulent intent was disclaimed, and the sole question was, whether the deed was fraudulent on its face. It has been suggested that this was a decision that a debtor, who conveyed only a part of his property, might stipulate for a release. I do not so consider it. Certainly the fact was not before the court that the debtor had any other property. It is true, Mr. Justice Story says he does not deem the fact material in that case. Why not material in that particular case, does not appear, and the facts are imperfectly stated. It would seem that he was considering, not an assignment for all creditors, but a special assignment for the benefit of particular creditors who had assented to it, though under what posture of the facts it could have been so viewed, does not appear. Nostrand v. Atwood, 19 Pick. 281. But that the learned judge did not intend to decide that a release might be stipulated for, when a part of a debtor's property had been reserved to his own use, I am led to think by the evident reluctance with which he arrived at the conclusion, that even a release of a debtor's future earnings could be required, and by the apparent approbation he gives to the decisions of Seaving v. Brinkerhoff, 5 Johns. Ch. 329; Austin v. Bell, 20 Johns. 442; and the distinction which he points out on page 230, between the New York cases and the other decisions. Brooks v. Marbury, 11 Wheat. [24 U. S.] 78, is also clearly distinguishable from this case. That deed was not alleged to be fraudulent as against creditors, but to be void at common law; and the defect was supposed to consist in the fact, that the grantor entertained a hope that it might have an influence in suppressing a prosecution for a felony. But the deed itself contained no provision calculated, or adapted to realize that hope. If it had held out a preference to those creditors who should forbear to prosecute, it cannot be doubted the court would have declared it void. So in this case, the mere fraudulent intent of the debtors permanently to withdraw a large sum of money from their creditors, would not vitiate a deed, even if it were made with a hope that, because of making it, a settlement would be more likely to be made with creditors. But when the deed is so contrived as to operate as an instrument to obtain impunity for the fraud, then it is tainted with the fraud of the grantors; their unlawful intent, instead of resting in their own breasts, has entered into the deed, and shaped its terms, and modified its effect, and framed it into an instrument of fraud, whereby to hinder and defeat the lawful rights of their creditors, and therefore it is void.

There are many decisions that an assignment of part of a debtor's property, for the benefit of all his creditors, stipulating for a release, is fraudulent in law, and void. Steere v. Steere, 5 Johns. Ch. 1; Seaving v. Brinkerhoff, Id. 329; Hyslop v. Clarke, 14 Johns. 458; Sheldon v. Dodge, 4 Denio, 217; Leutillon v. Moffat, 1 Edw. Ch. 451; Thomas v. Jenks, 5 Rawle, 221; Hennessy v. Western Bank, 6 Watts & S. 301; In re Wilson, 4 Barr. [4 Pa. St.] 430. Although it is difficult to resist the force of some of the reasoning in these cases, I am not prepared to say that such a deed is necessarily fraudulent on its face. If the property not conveyed by the assignment is left within the reach of creditors, if no actual fraudulent intent by the debtor existed, and upon the whole case, it appears that the instrument was not designed to aid any fraud, and could not so operate because, in point of fact, no fraud was either practised or intended, perhaps it would be going too far to say that, under the laws of Rhode Island, such an instrument would be void. But, in my judgment, the only possible question as to the soundness of these decisions arises from the fact, that they hold the presumption of fraud to be conclusive, and refuse to look beyond the instrument. That such provisions may be made an instrument of fraud, and when proved to be so, the assignment is void, I entertain no doubt. Still it is not necessary to decide any such question in this case, and I have only intended to express my dissent from the position that Halsey v. Fairbanks [supra] is to be considered as settling that law for this circuit. Besides, if the instrument be not void on its face, the creditors who have assented to this deed, have all done so after the attachments were made, and therefore with notice that the deed was impeached as invalid against creditors. That under some circumstances, the assent of creditors to an assignment made for their benefit may be presumed, I have no doubt. Halsey v. Fairbanks. That when a valid deed is delivered to a trustee the legal estate vests at once is clear. Brooks v. Marbury, 11 Wheat. [24 U. S.] 78. But I am not prepared to hold that the assent of creditors to a void deed is to be presumed, because the whole foundation for the presumption fails. The law cannot deem such a deed beneficial to the third party. Upon the assumption that the deed is valid upon its face, and is rendered void only by extraneous facts, the

assent of creditors is still not to be presumed, because, as Chief Justice Hosmer says, in Camp v. Camp. 5 Conn. 300, "the presumption of assent is not founded on the face of the instrument, but in the nature and circumstances of the entire case." Nor will such an assent be presumed to the prejudice of the just rights of third persons; a legal fiction is not to be permitted so to operate. "In fictione juris, semper æquitas existit." 11 Coke. 51; 3 Coke, 56; Waring v. Dewberry, Gilb. Eq. 223. Being void as against creditors when made, the attachments by the creditors were legal, and the subsequent assent of other creditors could not purge the fraud, nor render the deed valid as against the attachments; and being actually, and not merely constructively fraudulent, it is wholly void, and cannot be allowed to stand as a security to a third person who has assented to it, with notice of the fraud, or of such facts as were sufficient to put him on inquiry, and enable him to learn the existence of the fraud. Boyd v. Dunlap, 1 Johns. Ch. 482; Harris v. Sumner, 2 Pick. 129; Halsey v. Fairbanks.

I have also been referred to the charge of Judge Haile, of the supreme court of Rhode Island, on a trial of an action at law in which this deed came in question. I gave my assent to that part of this charge, in which the jury were instructed, "that it must be proved that Horton & Brother intended to defraud by this deed, and that the deed was actually the instrument to defraud, or it does not hinder, delay, or defraud creditors; but if you find this to be the fact, then the deed is void." It is upon this ground, as already stated, that I hold this deed void; and in respect to the question, whether it is void on its face, I do not find it necessary to express an opinion.

Let a decree be entered, in conformity with the prayer in the bill, save that no injunction to stop the prosecution of the suit in the state court, can be granted by this court.

[NOTE. For an action at law by George Hastings against Gideon L. Spencer and others, arising from this same assignment, see Case No. 6,201.]