McEwen & Tompkins *v.* Bamberger, Bloom &

Co. *et als.*

CREDITORS. *Lien by assignment and by legal proceedings. Priority.* In a contest between creditors claiming under a direct assignment to them by the debtor, and other creditors who had acquired a lien on the property by legal proceedings, the latter will have the better right, where, although the deed of assignment was registered, the assignee creditors had no notice of its existence until four years after the registration, and two years after the other creditors had acquired their lien, and then accidentally by finding the assignment on the register's book.

FROM MAURY.

Appeal from the Chancery Court at Columbia. J. V. WRIGHT, Sp. Ch.

W. S. RAINEY for complainants.

McDOWELL & WEBSTER for defendants.

COOPER, J., delivered the opinion of the court.

Miles H. Mayes, being the owner of two store-houses on which there was a vendor's lien for unpaid purchase money, due by instalments on the 8th of June, 1867, 1868 and 1869, drew up and signed, on the 16th of November, 1865, a deed conveying the store-houses and lots on which they were situated to the complainants, McEwen and Tompkins, in trust, to secure to each of them a specific debt mentioned.

The deed provided that if the debts were not paid

by the time the last instalment of purchase money was satisfied, then the secured creditors might take possession and sell the land to pay their debts, and reserved to the grantor the right to remain in possession until the expiration of the time specified. This deed was registered on the 29th of November, 1865, upon the acknowledgment of the grantor. One of the grantees was a resident of another county in this State than the county in which the grantor resided and the land lay, and the other was a non-resident of the State. Neither of them was ever notified by the grantor of the deed. In 1867 the defendants, Bamberger, Bloom & Co., and others, creditors of Miles H. Mayes, filed their bill to subject the interest of Mayes in said property to the satisfaction of their debts, and such proceedings were had that a decree was rendered in said suit for the sale of the property, first to satisfy the unpaid purchase money, and then to apply the surplus proceeds of sale to the satisfaction of the demands of the complainants. The land was sold, and after satisfying the debt of the vendor there remained a surplus of about $1,200. At this stage of the proceedings, on the 29th of January, 1870, McEwen and Tompkins filed this bill to have the benefit of the conveyance of the 16th of November, 1865, and, acquiescing in the sale made, to have the surplus proceeds applied to the satisfaction of their demands. The chancellor rendered a decree in conformity with the prayer of the bill, and the defendants, who are creditors of Mayes, have appealed.

The present complainants say in their bill that they

37—VOL. 3.

had no notice of the execution of the deed of Mayes to them, and were not aware of its existence until a few days before the filing of their bill, when it was accidentally seen upon the register's book by one of their counsel in examining into the title of the property. Under these circumstances the first question which arises is whether the deed was intended in good faith for the purposes expressed on its face, or was a mere fraudulent device resorted to by Mayes to hinder and delay his creditors. If the deed was fraudulent in fact or law on his part, no presumption of acceptance by the nominal grantees can arise. *Townsend* v. *Harwell*, 18 Ala., 301; *Stewart* v. *Spencer*, 1 Curt., 157; *Baldwin* v. *Peet*, 22 Texas, 708. For, says Mr. Justice Curtis, in *Stewart* v. *Spencer*, the law cannot deem such a deed beneficial to the creditors, and the presumption on which his assent rests necessarily fails. The peculiar features of this deed are that no trustee, resident in the county, has been selected to execute the trust; that no home creditor is secured; that two creditors at a distance are selected as grantees and beneficiaries without any previous consultation or subsequent notice; that the possession of the property was reserved to the grantor for four years, although the debt secured was comparatively small, if the beneficiaries should discover the deed and accept it; and that the grantor kept his own counsel, saying nothing of the deed to any one. Although the probate of a deed, and delivery of it to the register for registration for the benefit of the beneficiaries might, under some circumstances, be considered a de-

livery to the grantees (*Tompkins* v. *Wheeler*, 16 Pet., 106, 115), yet registration alone, nothing more appearing, would not suffice to establish a delivery. *Brevard* v. *Neely*, 2 Sneed, 170; *McEwen* v. *Troost*, 1 Sneed, 191; *Johnson* v. *Roland*, 2 Baxter, 203, 210. There should be some act or declaration of the grantor evidencing an intent that the instrument should take effect as a deed, and that he had done all that he thought necessary for the purpose. In the absence of any, the slightest evidence on the part of the present grantor that he intended more than a form, it is difficult to avoid the conclusion that the instrument and its registration were resorted to merely as a fraudulent device for the grantor's private benefit.

If, however, it be conceded that the grantor, as far as he actually went, was influenced by no sinister motive, the question would still remain whether what was done would give the grantees a right to the property superior to that of other creditors of the grantor, who had secured a lien on the property two or three years before the grantees had any notice of the existence of the deed.

In England, a deed of trust which is not executed by the creditors is looked upon as a conveyance made by the debtor for his own convenience, which he may control, alter or revoke at his pleasure, and which will not avail against other creditors who may acquire liens. *Walwyn* v. *Coutts*, 3 Mer., 707; *Garrard* v. *Lauderdale*, 3 Sim., 1; S. C. on Appeal, 2 R. & M., 451; *Acton* v. *Woodgate*, 2 M. & K., 492; *Simmonds* v. *Palles*, 2 J. & L., 489; *Johns* v. *Johns*, 8

Ch. Div., 744. Upon the strength of the earlier of these decisions this court has held that if a debtor conveys property in trust for the benefit of creditors. to whom the conveyance is not communicated, and the creditors are not in any manner privy to the conveyance, the deed will merely operate as a power to the trustees, and is revocable by the debtor, provided the revocation be made before the creditors receive information and accept the trust. *Galt* v. *Dibrell,* 10 Yer., 147; *Robertson* v. *Sublett,* 6 Hum., 313; *Brevard* v. *Neely,* 2 Sneed, 165; *Mills* v. *Haines,* 3 Head, 332. But these cases concede that the trust becomes irrevocable by the acceptance of the beneficiaries, and that the presumption is that they have accepted its benefits. The doubt was whether the presumption of acceptance alone would suffice in a contest as to priority of liens between the beneficiaries and other creditors. In *Mills* v. *Haines, ut supra,* this doubt was resolved against the sufficiency of the presumption, while in *Furman* v. *Fisher,* 4 Col., 626, the ruling was the other way. The weight of American authority, where the assignment is made to a trustee under such circumstances as to amount to a delivery by the grantor, and is otherwise valid, tends to sustain the sufficiency of the presumption of acceptance as against other creditors. *Marbury* v. *Brooks,* 7 Wheat, 555; S. C. 11 Wheat, 78; *Halsey* v. *Whitney,* 4 Mason, 206; *Nicoll* v. *Mumford,* 4 J. Ch. 529; *Scull* v. *Reeves,* 2 Green Ch., 84, 131; *Ingram* v. *Kirkpatrick,* 6 Ired. Eq., 462. And our decisions are now in accord with the current. *Farquharson* v. *McDonald,* 2 Heis., 404, 419; *Wash-*

*ington* v. *Ryan*, 5 Baxter, 622. It is, however, still an open question how far the rights of the beneficiaries will be affected by proof of the positive refusal of the trustee to accept the deed, or by the intervention of unsecured creditors, before acceptance by the trustee or the beneficiaries.

Delivery and acceptance seem to be as essential to the validity of a deed of assignment for the benefit of creditors as of any other common law deed conveying land. Burrill on Assignments, 305; Perry on Trusts, sec. 593; *Brevard* v. *Neely*, 2 Sneed, 172; *Johnson* v. *Roland*, 2 Baxter, 203. Neither the delivery nor the acceptance need, however, be formal, the intention of the grantor that what was done should operate as a delivery, and the intent of the grantee to accept the benefit being sufficient, and the intent of either or both may be implied from admissions, conduct or circumstances. *McEwen* v. *Troost*, 1 Sneed, 186, 191; *Nichol* v. *Davidson county*, 3 Tenn. Ch., 547. As between the grantor and grantee, these principles are universally recognized. And it seems to be equally conceded that, as between the same parties, the refusal of the trustee to accept will not vitiate the trust, and that the beneficiaries would, nevertheless, be entitled to have the trusts executed. *Field* v. *Arrowsmith*, 3 Hum., 442; Burrill on Assignments, 307. The doubt is whether unsecured creditors may not acquire a superior lien between the execution of the deed and its acceptance by the trustee or the beneficiaries, or both. And the authorities are neither uniform nor clear upon these points. The text books seem to

consider an acceptance essential, and that other creditors may acquire rights at any time before actual acceptance. Burrill on Assignments, 305; Perry on Trusts, sec. 593. The weight of authority is that whenever the title to the property has vested in the trustee, the rights of the beneficiaries become fixed, unless they actually dissent. Burrill, 306, citing *Brevard* v. *Neely*, 2 Sneed, 171; *Brooks* v. *Marbury*, 1 Wheat, 78; *Stewart* v. *Spencer*, 1 Curtis, 166; *Seal* v. *Duffy*, 4 Barr, 274. An acceptance by the beneficiaries seems to be equally efficacious, although the trustee dissent. Burrill, 307, citing *Seal* v. *Duffy*, 4 Barr, 274; *Webb* v. *Dean*, 21 Penn., 29; *Reynolds* v. *Bank of Virginia*, 6 Gratt, 174; *Dawson* v. *Dawson*, Rice Ch., 243; *Field* v. *Arrowsmith*, 4 Hum., 442; *Brevard* v. *Neely*, 2 Sneed, 164; *Harris* v. *Rucker*, 13 B. Mon., 564; *King* v. *Donnelly*, 5 Paige, 46.

The difficulty in this branch of the subject is in determining the status of the property before acceptance. Chancellor Walworth was of opinion that where land is devised to trustees, and all the devisees decline the trust, the legal estate must of necessity vest in the devisees for the benefit of the *cestui que* trust, for the reason that they cannot defeat the intention of the testator by their refusal. *King* v. *Donnelly*, 5 Paige, 46. In a similar case, this court was of opinion that the legal estate would vest in the heir of the devisor, subject to the trust. *Goss* v. *Singleton*, 2 Head, 67. Under a deed of assignment for the benefit of creditors, the Supreme Court of Pennsylvania seem to hold that until acceptance the title re-

mains in the assignor, or, upon the refusal of the assignee to accept, revests in him as by way of remitter, but not so as to affect the rights of beneficiaries accepting the trust; and if the court appoint other trustees, at the instance of the beneficiaries, that the title will pass to such trustees. *Read* v. *Robinson*, 6 W. & S., 329; *Seal* v. *Duffy*, 4 Barr, 274; *Webb* v. *Dean*, 21 Penn., 29. The Supreme Court of South Carolina have applied the principle enunciated by Chancellor Walworth to the case of a deed of assignment, and held that a delivery to a third person would be good as to the beneficiaries, and the trustee would not be allowed to dissent to their injury. *Dawson* v. *Dawson*, Rice Ch., 245. Our cases are in accord in the conclusion, but leave the principle of the decision undetermined. 2 Sneed, 171; 3 Hum., 442.

In principle, I think the true rule is that the acceptance of the trustee passes the title, and the beneficiaries may always come in under the deed unless they dissent; and that where the grantor has done all that is necessary to constitute a delivery, there is such a declaration of trust, whether the title passes or not by reason of the refusal of the trustee to accept, as will make the assignment effectual and irrevocable, as against third persons, upon the acceptance of the beneficiaries within a reasonable time. What is a reasonable time must depend upon the circumstances of the particular case. A failure to aver acceptance in a contest with unsecured creditors after the lapse of two years from the execution of the assignment, has been held sufficient to let in the unsecured cred-

itors who had acquired, in the interim, liens by attachment. *Dews* v. *Olwill*, 3 Baxter, 432. The delay and want of knowledge in the present case have been for a period of more than four years.

Another difficulty exists in this case. There is no trustee, and the deed of assignment is made directly to the nominal beneficiaries. Their assent is necessary both to pass the title and validate the trust. *Nicoll* v. Mumford, 4 Johns Ch., 572; *Tompkins* v. *Wheeler*, 16 Pet., 106; Perry on Trusts, sec. 593. Their assent may, it is true, be presumed, but the presumption is rebutted by the express declaration in the bill that they were not aware of the existence of the deed, and, of course, did not assent to it until a few days before the bill was filed. In the meantime, and two years previously, other creditors had acquired liens by attachment. There is neither adjudicated case nor principle upon which the acceptance, after such a lapse of time and under such circumstances, can be held to override the liens thus acquired.

I am of opinion, therefore, that the complainants are not entitled to the relief sought, and that the chancellor's decree should be reversed and the bill dismissed. But under the circumstances the entire costs ought to be paid out of the fund in controversy.

DEADERICK, C. J., delivered the following dissenting opinion:

On the 29th of January, of 1870, complainants filed their bill in the chancery court at Columbia.

They allege that they are creditors of M. H. Mayes, and that said Mayes, on November 16, 1865, executed to them a mortgage on two store-houses in Columbia to secure said indebtedness, and acknowledged said mortgage before the county court clerk on the same day, and that it was registered on the 29th of November, 1865. That defendants, creditors of said M. H. Mayes, having obtained judgments against him, filed their attachment bills in said chancery court in 1867 attaching said store-houses, and pray for the sale of the same, and after paying unpaid purchase money, they ask the court to apply the residue of the proceeds of the sale to the satisfaction of their debts.

It appears that under this bill of Bamberger and others, the store-houses were sold in 1869, yielding some $1,200 or $1,300 more than balance of unpaid purchase money. The sales were confirmed.

Complainants in this case had no knowlege of these proceedings, not having been parties to the case in which sale was ordered, and the parties in that case probably having no actual knowledge of the complainants in this having a mortgage on the said store-houses; nor had the complainants in this case any knowledge that such a conveyance had been made to secure their debts until after the confirmation of the sale of the store-houses in the cause of Bamberger, Bloom & Co. and others against said Mayes. As soon, however, as they ascertained such a deed had been made and registered, they filed this bill claiming the benefits of said deed. All the attaching creditors of Mayes, and the purchasers and Mayes are made

defendants to this bill. The mortgage recites that Mayes owes Galloway for purchase money, three notes each for $1,250, due respectively June 8, 1867, 1868 and 1869, and stipulates if Mayes shall pay these notes, and also the amount due Tompkins (about $1,000), and the amount due McEwen (about $1,500), when the last note to Galloway is due (June 8, 1869), the conveyance is to be void, otherwise they may sell the lots, and after paying Galloway the purchase money which may be due him when the last note to him, falls due, apply any surplus to their claims.

Upon the answer of defendants, who were creditors, the chancellor decreed in favor of complainants, and said defendants have appealed to this court. It is here insisted that the deed on its face retains the possession in the grantor for an unreasonable time, the stipulation being that the maker of the deed was to retain possession until the last note to Galloway, the vendor, shall fall due, June 8, 1869.

Mayes had bought the lots he conveyed to complainants of Galloway, and owed him three notes yet unpaid, falling due respectively June, 1867, 1868 and 1869, and if he should pay his notes due in 1867 and 1868 when due, Galloway, who had put him in possession of the property, could have taken no steps to dispossess him or sell the property until June, 1869, when the last note fell due, and then only if he failed to pay that note. Mayes, therefore, was entitled to the possession of the property, and to retain it under his contract of purchase from Galloway until he made default, and it was not an unreasonable delay to post-

pone the right of complainants to sell to the same time, June 8, 1869.

It is also argued that the provisions of the deed were not accepted by complainants within a reasonable time after its execution and registration. Within a few months after the last note for unpaid purchase money for the premises became due, and the fact of the execution of the deed to them to secure their debts became known to complainants, they file their bill to enforce their claim against the proceeds of the sale of the houses. They had not known of the deed to them before a sale was ordered, but their bill was filed electing to affirm the sale and take the proceeds before any distribution thereof was made. This was some four years after the execution and registration of the deed to them, and some twenty-four or more months after the filing of their attachment bills by Bamberger, Bloom & Co. and others. And it is insisted that complainants not having before signified their acceptance of the provisions of the deed made to them and for their benefit, their claims must be postponed to those of the attaching creditors. In the case of *Washington* v. *Ryan*, 5 Baxter, 622, it was held that a deed of trust being always made for the benefit of the *cestui que trust*, his acceptance or assent thereto will *always* be presumed *in the absence of proof to the contrary*. In our State most or perhaps all of the decisions have been upon deeds conveying the estate to a trustee for the benefit of the creditors. But in 2 Perry on Trusts, sec. 602, p. 155, it is said, "Mortgages containing powers of sale and deeds of

trust to secure a debt due to a creditor, are substantially the same thing in law and equity. At law, both kinds of deeds purport to convey the legal title to the grantee, or creditor or trustee; but in equity the land, the title and the deeds stand for security of the debt. The debt is the principal thing, and the conveyance of the land is collateral to the debt." It is the creditor who is intended to be benefited in either case, and he may accept or repudiate the conveyance. And a trustee in a deed of trust cannot defeat or prejudice the rights of the beneficiaries. He may refuse to act, but a court of equity will not permit the trust to fail for want of a trustee. 4 John C. R., 136; 1 Head, 206. If, therefore, a trustee may be dispensed with, or another appointed in his stead by the court, where the maker of the deed has appointed one who refused to act, we conclude that a mortgage with power of sale and deed of trust are as stated in Perry on Trusts, "substantially the same thing in law and equity—the debt the principal thing and the conveyance of the land a security for it."

In England, a conveyance for creditors to a trustee not communicated to them, and they not being parties thereto, may be revoked at the will of the assignor. But the rule is different in the United States. If an assignment, not fraudulent, is made to trustees for the benefit of creditors, their assent *is not necessary*, or their assent *will be presumed* in all cases if it is for their benefit and contains no unusual clauses. 2 Perry on Trusts, secs. 593, 602. It may be now

considered as settled, in relation to conveyances for the benefit of creditors, that in Tennessee the presumption is that the benefits intended by the conveyances are accepted by the beneficiaries. But the questions as to the effect and duration of such presumption, and how it may be or is removed, does not seem to be as fully settled or understood.

In the case of *Washington* v. *Ryan,* it is said that a presumption is *prima facie* proof of the fact presumed, and that unless the fact thus presumed is disproved, it must stand as proved. 5 Baxter, 634. Will the mere lapse of time, without other circumstances tending to show an abandonment of the benefits conferred by the deed, be sufficient to rebut the presumption? This court said, as far back as 1830, in the case of *Breedlove* v. *Stump,* quoting and adopting the language of Chancellor Kent in the case of *Moses* v. *Murgatroyd,* 1 Johns C. R., 119, that "the plaintiffs, as holders of the notes, are entitled to the benefit of this collateral security given by the principal debtor to his surety. These collateral securities are, in fact, trusts, created for the better protection of the debt, *and it is the duty of the court to see that they fulfill the design.*" And whether the plaintiffs were apprized at the time of the creation of the security is not material. The trust was created for their benefit, or for the better security of the debt, and when it came to their knowledge they were entitled to affirm the trust and enforce its performance. 3 Yerg., 264, citing 1 Johns. Cas., 205; 2 Johns Ch.,

418; 4 Johns Ch., 136. This was said in reference to an indemnity taken by a surety, and not by the creditor himself. But the court say, in fact, it was a trust for the better protection of the debt, and that the court should see that it was applied to this object. And it is accordingly held that the creditor may enforce its performance when the fact of the execution of the trust comes to his knowledge, although he knew nothing of it when first executed.

In answer to the argument that complainants did not make their election to accept this trust, the learned special judge who delivered the opinion of the court said, "I am of opinion that the trust being for their benefit, the law will presume an acceptance." He then refers approvingly to the case of *Shepherd* v. *Mc-Evers*, 4 Johns Ch., 136, in which a trust deed was made in June, 1807, to secure a debt due a firm in England, but without their knowledge. In October, 1807, the trustee and debtor made another trust upon the property, revoking the first. Shepherd, one of the creditors secured in the first trust, in June, 1816, nine years after the execution of the trust in his favor, and more than eight years after its attempted revocation, filed his bill, and the chancellor gave him relief, holding the first deed still valid, and declaring that the trustee, having accepted the trust, could not denude himself of it without the consent of the *cestui que trusts*, or the order of the court. Nor does it appear that the beneficiary had knowledge of the execution of the trust deed in his favor before the filing of his bill.

In the case of *Fields* v. *Arrowsmith,* Judge Turley says, "A deed of trust being always made for the benefit of the *cestui que trust,* the assent of the trustee is not necessary to its validity; it is true he may refuse to execute the trust, but in that case a court of chancery will execute it for him, and the assent of *cestui que trust* may be given at any time after the deed is made, and will always be presumed in the absence of proof to the contrary." 3 Hum., 444. Here the idea is again presented that the primary object of the court should be to carry out and enforce the trust according to its intention and purpose. The rights of the beneficiaries cannot be affected by the refusal of the trustee to act. They may accept at any time, and the law presumes they accept until it is proved that they have refused to do so. No time is fixed, in any of the cases, within which they must accept or be deprived of the benefits intended. The language of Judge Turley in 3 Hum., as above quoted, was repeated and approved in an opinion by Cooper, special judge, and now a member of this court, in the case of *Saunders* v. *Harris,* 1 Head. 206. The cases in 3 Yer. and 3 Hum., herein recited, were again referred to and appoved in the case of *Furman* v. *Fisher,* 4 Col., 630.

It is laid down in Bump. on Fraudulent Con., 350, treating of assignments for the benefit of creditors, that a delivery of the deed in fact or in law, to some person or into some place, beyond the debtor's control, is indispensable. A delivery to the clerk to be recorded, or to a third person, or a deposit of it

in the post-office, is sufficient delivery. *McEwen* v. *Troost*, 1 Sneed, 186; 2 Sneed, 164.

Here we have a delivery to the clerk, an acknowledgement by the maker, and registration of the deed. No evidence is found of any fraudulent intent by the maker, none, as we think, can be fairly deduced from the facts as against him, nor does there appear to be any such intent or collusion on the part of the grantees. And even if there were any circumstances in the case from which fraud upon the part of the maker could be inferred, this would . not avoid the deed unless participated in by the grantees. Bump. on F. C., 365; 9 Yer., 325, and numerous Tennessee cases.

The deed then having been, in contemplation of law, delivered and accepted, conveying the land to. complainants to secure their debts, is irrevocable by the maker or mortgagor. Perry on Trusts lays it down as a universal rule that a power coupled with an interest is irrevocable; and as a power of sale inserted in a mortgage or contained in a deed of trust to a creditor to secure a debt, or to a third person for his benefit, is a power coupled with an . interest; it cannot be revoked by any act of the grantor or donor of the power. Vol. 2, p. 160, sec. 602. He adds, "The debt remains, the right or lien on the property remains, and the power is coupled with them. In other words, the power is annexed to the property, and is an irrevocable part of the security, and goes with it."

In this case, in my opinion, there is no ground for the imputation of a fraudulent purpose on either the grantor or grantees, and there is sufficient evidence of a delivery and acceptance of the deed; and the deed having been duly registered after voluntary acknowledgement, the title passed out of the grantor irrevocably, except upon condition of the payment of the purchase money and complainant's debts. And in this state of facts I am further of opinion the attaching creditors, by their bill and writ of attachment, could acquire no other right than such as their debtor had at the time of the filing of their bills; that is, the right to any surplus of proceeds of sale of property after satisfying the secured debts.

In the case of *Farquharson* v. *McDonald*, 2 Heis., 418, it is said, "Upon the registration of the deed McDonald (the debtor) was divested of the legal title, and the law presumes that the benefits designed for the beneficiaries will be accepted by them, and the title vests in the trustee, irrevocable by the grantor, to await the election of the beneficiaries."

Chief Justice Nicholson further says, "While it is true that all the beneficiaries under a trust deed are presumed to accept its benefits, it is equally true that they may repudiate and reject the deed. And any distinct and unequivocal act of renunciation and repudiation of the benefits of the deed by any of the creditors intended to be benefited, will operate as an estoppel against further claims under the deed."

In Sto. Eq., sec. 1036a, the same doctrine is quite

38—VOL. 3.

as strongly declared.    It is there said, it is not nec-
essary that the creditors should be technical parties to
the deed, the assent to it will be presumed.    A gen-
eral assignment, *bona fide* made, assented to by the
assignee, is good against attachments or execution, un-
less all the creditors for whose benefit it is made re-
pudiate it.    And where a time is specified within
which creditors are to assent, they must come in within
the time, unless by reason of absence, or some other
cause, a creditor has not, within the prescribed time,
had knowledge of the assignment.    Here, it seems,
ignorance of the existence of the assignment, so far
from raising any presumption of renunciation is a
ground for extending the time within which to make
an election.

It would seem from this review of the cases that
the presumption of acceptance arises without reference
to the question of the knowledge or ignorance of the
beneficiaries of the fact of the execution of the trust
deed for their benefit, and that this presumption stands
until removed by some distinct and unequivocal act
of renunciation; that when the deed is executed and
registered the title vests in the grantee, and the cred-
itor cannot revoke it.    A deed, then, to secure cred-
itors, duly executed and registered, with the legal pre-
sumption of the acceptance of its benefits by them,
being notice to creditors of the grantor, ought not to
be declared of no validity against them until, by some
unequivocal act, they manifest a purpose not to claim
under it.

In this case there is no act or declaration of re-

nunciation of the benefits of the deed.    The convey-
ance is directly to complainants by the debtor, with
power to them to sell when the last note executed
by the debtor to his vendor for unpaid purchase money
of. the conveyed premises fell due, which was about
three and a half years after the date of the mortgage
deed.    They were directed first to pay balance . due
for purchase money, and the surplus, if any, to ap-
ply to the payment of their debts.

In my opinion there can be no ground of com-
plaint because of extension of time, because the debtor
had bought the property upon time, the last pay-
ment falling due in about three years and a half from
the date of the sale, and complainants were empow-
ered to sell at the expiration of this time if all the
purchase money and the debts due to them were not
then paid.    The vendor and vendee had agreed upon
the times for the payment of the purchase money,
which they might lawfully do, and it was competent
for the vendee, in executing his deed, to stipulate that
the land should not be sold for the secondary liability
until the whole debt for which it was primarily liable
fell due.    Within six months after this time the com-
plainants, who had but recently before ascertained that
a deed had been made to them to secure their debts,
filed their bill to enforce their right under the deed.
What evidence is there in this case that they ever
intended to renounce the benefits of the deed?    If
the title was vested, irrevocably as against the grantor,
to await the election of the beneficiaries, and if the
legal presumption existed in their favor until they

made an election to take the benefits under their bills,
filed within six months after they knew of its provi-
sions, when and how have they lost their rights?
Certainly not by any "distinct, unequivocal act of re-
nunciation," and we think not by the delay of six
months to sue after their rights under the deed ac-
crued.    No creditor was injured.    The deed was reg-
istered, and notice to all that the grantor had divested
himself of his right to the property to secure credit-
ors, and that the sale for this purpose was to be
made if the purchase money and debt remained un-
paid when the last payment for the purchase money
fell due.    Complainants could not move before this,
and shortly after their right to sell accrued they as-
certained the fact of the execution of the deed and filed
their bill.    If they had known from the time of its
execution that the deed was made, and did no act to
indicate renunciation, the legal presumption would still
have operated, and being ignorant of the making of
the deed, the legal presumption of acceptance would
not be rebutted by the fact of their ignorance of its
execution.    The case of *Dews* v. *Olwill* is not in con-
flict with this opinion.    Two years after the creditors
had attached the property in that case, Mrs. Doyle
was made a defendant, and did not then or at any
time accept the benefits of the deed, and the court,
in deciding this case, expressly confine its opinion to
this precise state of facts.

Upon the facts in this case I am of opinion that
complainants are entitled to the fund after satisfying
the vendor's lien, and that the chancellor's decree should

be affirmed.    I therefore dissent from the opinion of a majority of the court.

Judge TURNEY concurs in this dissenting opinion.